SPENCER, J. not having heard the argument, gave no opinion.

Judgment for the plaintiff. for the freight of 140 casks only.

[*]Scott *against* Libby and others.

[* 336]

THIS was an action of *trover*, brought to recover the value of 216 doubloons, equal to 3,280 dollars and 27 cents. At the *New-York* Sittings, held before Mr. Justice *Thompson*, the 11th *June*, 1806, a verdict was taken for the plaintiff, subject to the opinion of the court on the following case.

On the 25th *November*, 1803, the plaintiff chartered from the agent of the defendants, the ship *Live Oak*, belonging to them ; on board of which he shipped the doubloons and sundry other articles. By the bills of lading signed by the master, he was to deliver the doubloons, &c. to the consignee of the plaintiff, at the city of *St. Domingo*, freight to be paid as per charter party. The vessel sailed from *New-York*, on the 6th of *December*, on her voyage. On the 28th of *December*, they came in sight of *St. Domingo*, when they were boarded by a *British* ship of war, the commander of which forbade the master of the *Live Oak* entering the port of *St. Domingo*, as it was blockaded ; and she was compelled to depart and return to *New-York*, where she arrived on the 29th of *January*, 1804. The next day after the arrival of the ship, the plaintiff entered the cargo at the custom house, as merchandise on board the ship from *St. Domingo*, and obtained a permit to land the same. The agents for the defendants refused to deliver the cargo to the plaintiff,

*A vessel was chartered on a voyage from New-York to the city of St. Domingo and back to New-York, and the charterer was to pay an entire sum for the whole voyage in sixty days after the return of the vessel to New-York. On arriving in sight of St. Domingo, the vessel was turned away by a British cruiser, on account of the port's being blockaded ; the vessel, therefore returned with her original cargo to New-York; and the owners of the vessel refused to deliver up the cargo until the freight was paid. In an action of trover bro't to recover the goods, it*

ALBANY,
August, 1807.

Scott
v.
Libby and
others.

was held that
nofreight was
due. A bloc-
kade of the
port of desti-
nation dis-
[* 337]
solves the
charter par-
ty, and all
claim for
freight under
it is gone. No
pro rata
reight can
be recovered,
unless the
goods have
been accept-
ed at a place
short of the
port of desti-
nation.

* *Valin, Liv.*
3. *tit.* 3. *Fret.*
*art.* 15.
† *Law of*
*Merchant*
*ships, &c.* p.
360.

unless he would pay the full freight as mentioned in the charter party; and he retained the doubloons on account of freight, but delivered the residue of the cargo to the plaintiff.

By the charter party, the outward cargo was to be delivered *at the city of St. Domingo*, to the consignee, and the plaintiff was to pay for the freight of the outward and return cargoes $4,444 44, in 60 days after the ship's return to *New-York.*

[*]This cause was argued at the last term by *Hoffman* and *Riggs*, for the plaintiff, and *Wells*, for the defendant.

*Hoffman* and *Riggs*. This case presents a question of some novelty. By the terms of the *charter party*, no freight was due until the delivery of the return cargo at the city of *New-York*. It is an important feature in this instrument, that the contract is for a gross sum, as freight for the entire voyage. It will not be denied that the voyage has never been performed. The restraint which prevented the arrival of the ship at *St. Domingo*, may excuse the defendants from being answerable in damages for the non-performance of their contract; but it can never entitle them to freight. There is no adjudication of the *English* courts on this point. The *French* ordinance directs, "that if it happen that commerce be prohibited with the country to which a ship is in the course of sailing, and the ship be obliged to return with the lading, the freight outward only shall be due, though the ship be freighted out and home."* This provision, Mr. *Abbot* remarks,† is not to be found in any other ordinance, or writer; and, in page 339 of his work he intimates that the rule would be different in *England.*

But it will be contended, that if the defendants have not a right to their whole freight, they are at least entitled to a compensation, on a *quantum meruit*. Courts have already gone far enough in regard to a *pro rata*

freight. If the owners of the vessel had insured their freight, they might, according to the decision in *Schmidt* v. *The United Insurance Company*, have recovered for a total loss.‡ Here is an express contract in writing between the parties, by which the payment of the freight is made to depend on the delivery of the cargo at the port of destination. The non-delivery does not arise from any inattention or fault of the plaintiff. The only case in which the *charter party* can be abandoned, and resort be had to the action of *assumpsit*, to recover a *pro rata* freight, is where the vessel has been forced out of her way, and the cargo has been delivered to the owner at an [*]intermediate port.* Here the voyage was not broken up at an intermediate port, and the defendants, after the return of the vessel, did not even offer to carry the cargo to *St. Domingo*, or to any other place. The defendants have, no doubt, performed some labour, and been at some expense, but without any benefit to the plaintiff. The claim of the defendants ought to be considered in the same manner as if they were plaintiffs ; and it is clear that they could not recover freight in any form of action. The apportionment of freight in this case would be attended with insuperable difficulty. Where a vessel is chartered for a specific sum, for the voyage, without regard to the quantity of goods, it is rather a contract for the use of the ship, than for the transportation of merchandise, and does not present a case of freight.†

There has been an actual conversion by the defendants. The *lien* claimed by them will not authorize a conversion, but a detention only, of the goods, until the freight be paid. But there was no right of *lien* in this case ; for it is not a case of freight, and the party must resort to his contract.‡ Having agreed to accept a note at 60 days, no *lien* can exist. If the notes be not given or paid, the only remedy of the defendants is on the *charter party ;* and by that the delivery of the cargo is made a condition

ALBANY,
August, 1807.

Scott
v.
Libby and
others.

‡ 1 *Johnson*, 249.

[* 338]
* *Post and Russell* v. *Robertson*, 1 *Johnson*. 24. *Abbot*, 245. and see *Robinson* v. *The Marine Insurance Company*, ante, p. 323.

† *Paul* v, *Birch*, 2 *Atk*. 621. *Abbot*, 244. *Malyne's Lex Mer.* 100 *Bright* v. *Cowper*, 1 *Brownlow*, 21. *Abbot*, 263. ‡ *Abbot*, 199. 228.

ALBANY,
August, 1807.

Scott
v.
Libby and
others.

precedent, which must be performed, before the defend-
ants can have any right of action.

*Wells*, contra. The defendants are entitled either to
their whole freight, or to a reasonable compensation for
the service they have performed. This is an action of
trover; and if the defendants show a right to retain the
property, the plaintiff cannot recover. A contract be-
tween individuals may be dissolved by the acts of the
government to which they belong; but though the effect
of a prohibition is to prevent either party from recover-
ing damages for the non-performance of the contract, it
does not take away the right of compensation for work
and labour or service already performed. It would be a
manifest injustice to refuse a compensation for work al-
ready done, when the party has [*]been prevented from
the completion of his undertaking by the act of a superior
power. An embargo produces a suspension only of the
contract; but a blockade operates as a dissolution of the
*charter party*. The right of blockade is derived from the
law of nations, which neutral nations are bound to obey;
and the prohibition is as effectual and binding as any law
of their own country. The engagement to deliver the
cargo at *St. Domingo*, was thus dissolved, and the par-
ties are placed in the same situation as if no special con-
tract had existed. The defendants, then, are entitled to
a reasonable compensation for the use of their vessel.—
Had the cargo been received at *St. Domingo*, the out-
ward freight would have been due. As the plaintiff did
not receive his goods there, but they were brought back
for his benefit, the defendants became entitled to the
homeward freight. There has been no fault on the part
of the defendants; their conduct has proved beneficial to
the plaintiff, who has had the use of their vessel for his
goods for the whole voyage; they are, therefore, entitled
to the whole freight. Again, the voyage may be consid-
ered as broken up by the consent of the plaintiff, who en-

[* 339]

tered the cargo as imported from *St. Domingo*, obtained a permit for its being landed, and demanded its delivery, without requesting the defendants to pursue the voyage.* The plaintiff had no right to insist on the relanding of goods, already laden, without paying the full freight.†

The marine ordinance of *France* expressly provides, that if commerce happen to be interdicted with the country to which the ship is bound, after her departure on her voyage, and she is obliged, on that account, to return with her cargo to her port of departure, the freight outward only is due, though the ship be hired out and home. The ordinance itself is of great authority, and *Valin*, in his *commentary*, remarks, that nothing can be more just, since it is a case of pure accident, arising from superior force, against which neither party warrants.‡ The equity of this provision has also received the approbation of *Pothier*, in his treatise on the contract of *charter party*.§ [*]The observation of Mr. *Abbot*, that this case would probably be decided on the same principles as that of a prohibition before the commencement of the voyage, deserves little weight against the deliberate opinions of *Valin* and *Pothier*. Where no *English* authorities are adduced, this court are at liberty to adopt such rules as appear most equitable and just.

If the defendants cannot claim their whole freight, they are, on every principle of justice, entitled to a compensation for the service they have performed, and the great expenses they have incurred, in navigating the ship, for the benefit of the plaintiff. A *pro rata* freight, at least, is due, on the principles established in the cases of *Lutwidge* v. *Grey*,* *Luke* v. *Lyde*,† and *Post & Russell* v. *Robertson*.‡ The present case is, in effect, the same as if the vessel had been forced into an intermediate port, and the cargo received there. She has been driven back by a superior force, into the port of *New-York*, where the owner, without requesting the defendants to make any

ALBANY,
August, 1807.

Scott
v.
Libby and
others.

* 3 *Bos. &
Pul.* 241,
*Toteng* v.
*Hubbard.*
† *Abbot*, 338.
2 *Eq. Ca. Ab.*
98. *Anon.*

‡ *Valin Com.
tom.* 1. p. 658
*liv.* 3. *tit.* 3.
*Fret. Art.* 15.
§ *Pothier,
Charte Partie, n.* 69.

[* 340]

* *Abbot*, 249.
† *Burrow*,
882.
‡ 1 *Johnson*,
24. See also,
*ante*, p.323.

ALBANY,
August, 1807.

Scott
v.
Libby and
others.

§ Doug. 277.

[* 341]

further attempt to prosecute the voyage, or to carry the goods elsewhere, not only elects to receive them, but insists on their delivery. Though the plaintiff may have derived no benefit from the service of the defendants, he may still be bound to compensate them. In the case of Luke v. Lyde, the goods could not be sold at all, at the port of delivery. In Hotham v. East India Company, § freight was adjudged for the goods saved, though so damaged as not to be worth the expense of salvage; and in Lutwidge v. Grey, though part of the tobacco was found so damaged as to be afterwards burnt at the scales, yet freight was adjudged to be sold.

THOMPSON, J.    The claim to freight set up by the defendants cannot be sustained. It appears to be conceded by the counsel on both sides, that by the blockade of the port of discharge, the charter party was dissolved, and all claim to freight under it gone. (Abbot, 338.) Nor is this a case for pro rata freight. Here was no acceptance of the cargo at an intermediate port. A variety of cases may occur [*] where the owner of the goods may make himself responsible for freight, by an acceptance of his goods, short of the port of destination. But this results from an implied contract, raised by the acceptance of the cargo, and a supposed benefit received by the owner, from a partial transportation of his goods. But when the cargo, as in the present case, is brought back to the port of lading, no such presumption can arise. No benefit has accrued to the owner, nor has he done any act, from which an implied contract to pay any freight can be raised. The case of the Hiram, decided by Sir William Scott, (3 Rob. Ad. 180.) is an analagous case; and notwithstanding it is not to be received as an authority, it is entitled to very respectful consideration, as the decision of a learned and eminent jurist on the maritime law of England. In that case, after a part performance of the voyage, and a capture and re-capture, the vessel was

brought back to the port, or *quasi* port of her departure. And after a consideration of the foreign authorities, and the case of *Luke* v. *Lyde,* it was held that neither under the particular terms of the contract, nor upon general principles and practice, was any freight due.

I am, therefore, of opinion, that judgment ought to be rendered for the plaintiff.

KENT, Ch. J. was of the same opinion.

SPENCER, J. not having heard the argument, gave no opinion.

Judgment for the plaintiff.(*a.*)

(*a.*) To entitle to *pro rata* freight, the acceptance must be voluntary. Welch v. Wicks, Plow. 504.

