| 1 | 95 |
|----|----|
| 67 | 17 |

---

## LEMUEL MARTENDALE *versus* JESSE FOLLET.

In a note for merchantable neat stock, an insertion of the word "young" after "merchantable," is a material alteration. When such alteration was made by the promisee designedly, it destroys the validity of the note. When a note is thus made void by an alteration, the promisee is not at liberty to prove the contract by other evidence.

THIS was an action of assumpsit. The declaration contained four counts. The first was on a promissory note, alleged to be for seventy dollars, payable in "merchantable young neat stock." The second was on a note of the same date and amount, payable in "merchantable neat stock." The third count was for a yoke of oxen, valued at seventy dollars, sold and delivered ; and the fourth on a special promise of the defendant, in consideration of a pair of oxen bought and received of the plaintiff, to pay him seventy dollars in merchantable neat stock. The defendant pleaded the general issue. The cause was tried here at the last term, when the plaintiff offered in evidence a note which purported to be signed by the defendant, for seventy dollars, payable in merchantable young neat stock. The signature of this note was proved to be in *Follet's* hand writing. The defendant then introduced testimony to shew that the word "young" was not originally in the note ; but had since been inserted by the plaintiff without the defendant's consent. The plaintiff proposed to waive the two counts on the note, and show that it was given for a pair of oxen valued at seventy dollars, as stated in the third count, under which he considered himself entitled to recover their value ; or to

show under the fourth count that for those oxen the defendant promised to pay him seventy dollars in neat stock; which not having done, he was still liable for the same on the special contract. But the court considered this testimony inadmissible, and directed the jury that if from the evidence they were satisfied the word "young" was, after the execution of the note, designedly inserted by the plaintiff, without the defendant's consent, it was a fraudulent and material alteration, which rendered the note void, and entitled the defendant to their verdict.

The jury returned a verdict for the defendant, which was taken subject to any exceptions that might be made to the rejection of the above testimony, or to the directions of the court to the jury.

*Oliver*, and *J. C. Chamberlain*, for the plaintiff.

*Flanders* and *Upham*, for the defendant.

WOODBURY, J., delivered the opinion of the court.

Alterations have been held to be material, when made in the date of a contract, to accelerate payment, as in *Masters* vs. *Miller*, 4 *D. & E.* 325: or if any other way modifying the length of credit, as in *Bowman* vs. *Nichol*, 5 *D. & E.* 537, and *Cardwell* vs. *Martin*, 9 *East* 190. So when made to avoid the statute of limitations, as in *Homer* vs. *Wallis*, 11 *Mass. Rep.* 309: or when made in the nature of the consideration, if affecting the evidence which might afterwards be adduced in relation to it, as in *Knill* vs. *Williams*, 10 *East* 431: or when made in the subject matter of the writing, as a general release altered to embrace also a particular claim *eo nomine*, and thus, like the last case, affecting the evidence that might be produced against it, as in *Bates* vs. *Hills*, December, 1814, *Hillsborough*: or indeed when made in any part of an instrument, if varying the "rights or interests, duties or obligations of either of the parties." 5 *Mass. Rep.* 540.

On the contrary, alterations have been held to be immaterial when they were made to supply a word omitted by mistake, as in *Hunt* vs. *Adams*, 6 *Mass. Rep.* 519: or when

made by inserting into the body of the bond the name of an obligor who had already signed it, as in *Smith* vs. *Crooker & al.*, 5 *Mass. Rep.* 540 : or by writing "good" before "merchantable wool," as in *The State* vs. *Cilley, Hillsborough*, April, 1817 : or by any other interlineation which the law itself would supply—6 *Mass. Rep.* 522, and which does not vary the nature, subject matter, or value of the contract.

But the alteration of the note in the present case changed the subject matter of the contract ; for it was an attempt of the plaintiff to convert an obligation of the defendant to pay seventy dollars, in neat stock of *any* age, into one for such neat stock only as should be "young." Were this permissible, the plaintiff would acquire a right to demand the whole payment of his note in a kind of stock, not an animal of which was necessarily embraced in the original contract. A substitution of the word "sheep," or "horses," for "neat stock," would not have been a more effectual change of the subject matter of the note. *Pothier* 86, § 374. Its value may also have been materially altered. The worth of articles may be relative as well as positive. Thus in the market seventy dollars worth of flour or of gunpowder makes the same nominal amount of property, but one of these articles may be in much quicker demand than the other, and the value of an obligation for one compared with that of an obligation for the other, may be varied by numberless causes, which it is unnecessary to enumerate. It may be observed, also, that the promisor generally consults his own convenience in the specific articles to be paid ; and a change in the kind, though not in the nominal amount, may be seriously injurious to him. And if they are designated for the promisee's benefit, the promisor may have seasonably prepared the stipulated quantity of those designated, which, by such an alteration, he may be obliged to sacrifice, and purchase other articles of a different species. Indeed, if the plaintiff did not apprehend the real value of the contract to be increased by the altera-

<div style="float:left">Martendale<br>vs.<br>Follet.</div>

tion, it is difficult to discover any reason for his tampering with the note.

The alteration, then, in this case having been material, and made, as the jury have found, by the plaintiff, without the consent of the promisor, the note itself becomes void. 11 *Co.* 27.—10 *Co.* 92.

If void, the note itself cannot become the foundation of a recovery in any form of action. *Vide auth. supra.* and 1 *Es. C.* 18, 244.—1 *John.* 94.—*Peake's Ev.* 288.—1 *East* 55.— 7 *D. & E.* 241. An additional reason against any recovery on an instrument rendered void by an alteration, is derived from the circumstance that the writing produced is not the writing executed by the defendant, it being "expressed in other words." 9 *Mass. Rep.* 311. If those other words should now be considered erased, he still could not recover on the second count, describing the note as originally made ; because the instrument is proved to have been once rendered void ; and, once void, it cannot again become obligatory without the consent of the promiser ; because, as observed by *Grose,* 4 *D. & E.* 345, "a man shall not take the chance of committing a fraud, and, when that fraud is detected, recover on the instrument as it was originally made."

But the plaintiff insists, that if he cannot sustain the action on the two first counts, which describe the note, the testimony offered would entitle them to a verdict on the two last counts, which do not refer to the written evidence. These are both, however, founded on the same consideration with the note. The third is simply for the price of a pair of oxen sold by the plaintiff to the defendant ; and a sufficient answer to it is, that the contract at the time of the sale was not to pay money for the oxen ; but was special, both in its manner and matter, and should thus be declared on. The fourth count is not liable to this objection, for it alleges the sale of the oxen, and then details the promise to pay for them in substance as described in the note ; and were it not founded on the same consideration with the note we certainly could en-

tertain no doubt of the plaintiff's right to recover upon it. But after a diligent search we have been unable to discover any case where a written agreement has been made, and that agreement been subsequently rendered void by the fraudulent act of the promisee; and still a recovery permitted upon the proving the agreement by other evidence. It is true that a promissory note is not always a merger of the verbal contract for which it is given. *Pk. Ev.* 220.—1 *John.* 36.—8 *do.* 149, 389, *Putnam* vs. *Lewis.*—6 *Mass. Rep.* 145.—7 *do.* 37, 45, 298.—10 *do.* 51.—12 *do.* 172, *State Bank* vs. *Hurd.* —3 *East* 251. But where it is not, there can be no recovery on the verbal contract, unless the note, if at first valid, still continues so, and is produced in evidence, or proved to have been lost by time or accident. This is a general rule deduced from all the authorities that have occurred to us.

Where a recovery has been permitted on the verbal contract, when the notes were unstamped, 1 *East* 58.—7 *D.&E.* 241; or given for gambling money, 1 *Esp. Cas.* 18, the notes were by statute never valid; and not, as in this case, once binding, and afterwards rendered void by the misconduct of the promisee. The notes there having been void *ab initio,* the verbal contracts remained as if the notes had never been executed. Where a recovery has been permitted, when the notes are offered in evidence under the money counts, 3 *D. & E.* 182.—6 *Mass. Rep.* 189.—12 *John.* 94; or under those for labor, &c., 8 *John.* 149.—1 *do.* 36; or, if not produced, are proved to have been lost by time or accident, 3 *D. & E.* 156, the notes themselves in those cases remain valid till the trial; and are, if present, then cancelled; or, if absent, then first made void by a recovery for the consideration of them. They have not, as in the present case, been rendered inoperative by the promisee, between their execution and the trial, but continue obligatory and in full force till judgment. Indeed, permitting a recovery under the circumstances of this case, would be equivalent to a decision that an obligee may give a valid discharge to an obligor of his bond or note, and still recover the amount of them. The policy of the law,

Martendale
*vs.*
Follet.

too, in rendering void all instruments thus altered, would be wholly subverted. For should the offender be still enabled to recover the consideration, the mere loss of the written evidence would operate very little *in odium spoliatoris;* and would but feebly punish him for his fraud, and but very slightly intimidate others from tampering with their securities. It is true that a criminal prosecution might be instituted for the alteration; but that does not obviate the established policy of the law before mentioned, nor render it less proper that the felon should be disabled from supporting any civil claim essentially founded on the instrument he has forged.

The following authorities seem to support the views we have taken as to a recovery upon the last count. *Millar* vs. *Master,* 4 *T. R.* 325.—15 *East* 28.—*Coolidge* vs. *Inglee,* 13 *Mass. Rep.* 32.—*Chitty on Bills* 84.

Let judgment be entered on the verdict.