## JASON HARRIS *versus* HAMLIN RAND.

A contracted to transport for B a quantity of salt from Hartford, in Connecticut, to Haverhill in this state, and had carried the same in a boat upon Connecticut river a part of the way, when he met B who told him he must go by water as far as he could and then land the salt. A arrived with the salt within thirteen miles of Haverhill, when by reason of the ice in the river he was compelled to land the salt where a part of it was lost by inevitable accident, it was held that B was not liable for the freight of the salt lost.

This was an action of assumpsit, brought to recover, among other things, for the transportation of 166 1-2

bushels of salt from Hartford, in Connecticut, to M'Duffie's ferry, in Piermont, in this state, and was tried here upon the general issue, at May term, 1826, and a verdict taken for the plaintiff, subject to the opinion of the court upon the following case.

On the 4th of November, 1820, the defendant delivered to the plaintiff, at Hartford, in Connecticut, a large quantity of salt, to be transported from that place to Haverhill, in this state, and there delivered to the defendant at Kimball's landing. When the plaintiff arrived with the salt in a boat, at Sugar river, the defendant came there and told the plaintiff that he was afraid that the plaintiff would not be able to go up to Kimball's landing, the river having begun to be frozen ; that the plaintiff must go up as far as he could, and when he could go no farther, must land the goods in the most convenient place. When the plaintiff arrived at M'Duffie's ferry, which is thirteen miles below Kimball's landing in Haverhill, the river was so frozen that he could proceed no farther with his boat; he therefore took the loading from the boat there and deposited it upon the shore of the river, and left it in the care of two boatmen, and sent word to the defendant where it was left.

The succeeding night the river was so obstructed by ice that the current changed, and in consequence of this a part of the salt, being the 166 1-2 bushels, for the freight of which this action was brought, was swept away and lost.

On the next day the defendant accepted the salt which had not been washed away, and paid the freight of it, and the question was, whether the defendant was liable for the freight of the salt which had been lost.

*Goodall* and *Bell*, for the plaintiff.

*J. Smith*, for defendant.

RICHARDSON, C. J. This is a very clear case. The contract between the parties was, that the plaintiff should transport the salt from Hartford to Haverhill. On this

contract the plaintiff has no right of action, because it has not been performed on his part.

But it is contended that there was an agreement on the part of the defendant to receive the salt at any place where the plaintiff might be compelled to land it, and that as the plaintiff was compelled to land it at M'Duffie's ferry, and did actually land it there, an implied promise arises to pay for the freight of all the salt to that place. In examining this ground on which the plaintiff rests his claim, we shall take it for granted that it was the understanding of the parties, that the defendant should receive the salt at any place where the plaintiff might be compelled to land it, and proceed to enquire, whether, if such were the understanding of the parties, the action can be maintained ?

Where there is a special contract to carry goods from one port to another, if the owner accept his goods at an intermediate port, such acceptance is held to raise an implied promise to pay a *pro rata* freight. 1 Johns. 24, *Post* v. *Robertson* ; 7 D. & E. 381, *Cook* v. *Jennings* ; 10 East, 526, *Liddard* v. *Lopes* ; 6 Taunt. 65, *Shields* v. *Davis* ; 2 Johns. 336, *Scott* v. *Libbey* ; 5 East, 316, *Mulloy* v. *Barker* ; 1 Taunt. 300, *Christy* v. *Row* ; Abbot on shipping, 335 ; 2 Burr. 882, *Luke* v. *Lyde* ; Roccus, 71.

The ground on which this rule rests, is, that the owner who receives the goods at an intermediate port has the benefit of their transportation to that place, and this benefit is the foundation of the implied promise. Besides it is to be presumed that if the goods were not accepted at the intermediate port, the carrier would convey them to the destined port and earn his whole freight.

But an agreement to accept the goods at an intermediate port is not, for this purpose, tantamount to an actual acceptance of the goods. To raise an implied promise to pay a *pro rata* freight, the goods must be actually delivered and actually received. Until this is done, the owner cannot be considered as having received any benefit from the transportation.

Harris
*v.*
Rand.

In this case Rand never received the salt. It was lost before it could be delivered to him. He has received no advantage from the labor of the plaintiff in transporting the salt which has been lost, and there is nothing on which to ground an implied promise to pay for that labor. If the defendant had actually received the salt he would have been liable for the freight, although it might have been lost the next moment. The acceptance of the goods is the very substance of the implied contract. The defendant agreed to receive the goods at any place where the plaintiff might be compelled to stop. But the salt has never been received by the defendant at any place. The landing of the salt at M'Duffie's ferry cannot be considered as a delivery to the defendant. It still remained in the custody of the plaintiff until lost.

We are therefore of opinion, that upon the case stated the verdict cannot be sustained, and of course there must be                          *A new trial granted.*