## John Leckie *vs.* Joseph H. Sears & another.

A charter party for the freighting and chartering of a ship to a port of discharge and back at a lump sum for the round voyage, provided that "the amount of the outward freight" should be "paid the captain on the safe delivery of the outward cargo" at the port of discharge, "free of insurance and commissions, less towage and compressing," and that towage and compression should be paid by the charterers. Some of the cargo was so damaged on the outward voyage, by a peril of the sea, that it had to be sold in a port of distress, but the ship delivered the remainder safely, and made the round voyage. *Held,* that the whole freight was due.

A charter party of a ship with two cabins, separated by a partition, one used as a dining room and the other as a sitting room, placed the whole ship "with the exception of the cabin" at the disposal of the charterers. *Held,* that the charterers must pay freight beyond the amount of the charter money for goods carried in either cabin.

CONTRACT by the master and owner of the brig J. M. Wiswall on a charter party (which is printed in the margin *) by which

---

* This charter party, made and concluded upon in Boston the eighteenth day of August in the year one thousand eight hundred and seventy, between Captain John Leckie, master and owner of the brig J. M. Wiswall of Boston, of the burthen of 379 tons or thereabouts, register measurement, now lying in the harbor of Boston, of the first part, and Messrs. J. Henry Sears & Company of the second part, witnesseth, that the said party of the first part, for and in consideration of the covenants and agreements hereinafter mentioned to be kept and performed by the said parties of the second part, doth covenant and agree on the freighting and chartering of the said vessel unto the said parties of the second part, for a voyage from Boston to Mobile and back to a port north of Hatteras, New York excepted, on the terms following, that is to say :

First. The said party of the first part doth engage that the said vessel, in and during the said voyage, shall be kept tight, staunch, well fitted, tackled, and provided with every requisite, and with men and provisions necessary for such voyage.

Second. The said party of the first part doth further engage that the whole of said vessel (with the exception of the cabin, and the necessary room for the accommodation of the crew, and the stowage of the sails, cable and provisions) shall be at the sole use and disposal of the said parties of the second part during the voyage aforesaid; and that no goods or merchandise whatever shall be laden on board otherwise than from the said parties of the second part or their agent, without their consent, on pain of forfeiture of the amount of freight agreed upon for the same.

Third. The said party of the first part doth further engage to take and receive on board the said vessel, during the aforesaid voyage, all such lawful

·he chartered her to the defendants for a voyage from Boston to Mobile, and back to any port north of Hatteras, except New York,

goods and merchandise as the said parties of the second part or their agents may think proper to ship.

And the said parties of the second part, for and in consideration of the covenants and agreements to be kept and performed by the said party of the first part, do covenant and agree with the said party of the first part to charter and hire the said vessel as aforesaid, on the terms following, that is to say :

First. The said parties of the second part do engage to provide and furnish to the said vessel a cargo of lawful merchandise.

Second. The said parties of the second part do further engage to pay to the said party of the first part, or his agent, for the charter or freight of the said vessel during the voyage aforesaid, in manner following, that is to say : Forty-three hundred dollars United States currency, for the round voyage back to Boston, and if to Philadelphia the extra port charges inward over Boston port charges. If Providence, Salem or Portland, one hundred and fifty dollars extra. The amount of the outward freight to be paid the captain on the safe delivery of the outward cargo at Mobile, free of insurance and commissions, less towages and compressing.

It is further agreed between the parties to this instrument, that the said parties of the second part shall be allowed, for the loading and discharging of the vessel at the respective ports aforesaid, lay days as follows, that is to say Thirty running lay days for loading in Boston, and loading and discharging at Mobile, and despatch in discharging at port of discharge. Lay days to commence in Boston September 1, 1870, if the vessel is ready, and in Mobile when the captain reports to the agents of the parties of the second part as ready to discharge his cargo, and in case the vessel is longer detained, the said parties of the second part agree to pay to the said party of the first part demurrage at the rate of fifty dollars per day, day by day for every day so detained, provided such detention shall happen by default of the said parties of the second part, or their agent.

It is also further understood and agreed that the cargo or cargoes shall be received and delivered within reach of vessels' tackle at the ports of loading and discharging.

The parties of the second part to have privilege of deck-load, and to pay the towages in at Mobile and outward towages if she draws over eleven feet of water; if less than eleven feet, the captain pays his own towages out. The parties of the second part agree to pay compressing. The party of the first part agrees to pay the parties of the second part four cents per barrel upon amount of outward cargo, for outward stevedores' bill in Boston.

To the true performance of all and every of the foregoing covenants and agreements, the said parties, each to the other, do hereby bind themselves,

for the sum of $4300. The case was submitted to the judgment of the superior court, and of this court on appeal, upon the following statement of facts :

" The plaintiff received a full cargo from the defendants, consisting of 213 tons of ice and an assorted cargo of various sorts of merchandise, and on September 19, 1870, left Boston for Mobile. She encountered heavy weather, struck upon a reef, leaked badly in consequence, and was compelled to put into Key West, (where she arrived on October 16,) to make such repairs as were necessary to enable her to proceed. On arrival at Key West, some of the assorted cargo was found to be so damaged by seawater as to make a sale expedient; and it was sold, and the proceeds duly accounted for. The ice, being likely to perish from exposure to the air while the vessel was under repairs, was sold, and the proceeds of the whole, amounting to $440.25, were duly accounted for ; but the defendants received no freight upon it from the owners of the ice, nor any freight on the part of the residue of the cargo sold. The plaintiff, on or about November 3, said to the defendants that he could sell his interest in the vessel to another captain at Key West, if the vessel was released from the charter on her arrival at Mobile, and asked the defendants to release her at Mobile, which they declined to do. The plaintiff, on December 18, resumed the voyage with the remainder of the cargo, and delivered it at Mobile, where it was accepted by the consignees, and $826.37 was paid to the plaintiff on account of charter money at Mobile. The plaintiff then received a full return cargo, and twelve bales of cotton, which were stowed in the cabin, all which were duly delivered in Providence as directed by the defendants, where he received $725 on account of the charter money. There were two cabins divided by a partition, one used

their heirs, executors, administrators and assigns (especially the said party of the first part, the said vessel, her freight, tackle and appurtenances; and the said parties of the second part, the cargoes, merchandise to be laden on board;) each to the other in the penal sum of the estimated amount of charter. In witness whereof the said parties have hereunto interchangeably set their hands.

John Leckie, Agent for Owners.

J. Henry Sears & Company.

as a sitting room and the other as a dining room, and both had state rooms. The plaintiff put ten bales of cotton into the state rooms in the front cabin, and two bales into the state room in the after cabin.

" The plaintiff claims extra freight on account of the twelve bales taken in the cabin, and also claims the full amount stipulated in the charter party, less the amounts paid. The defendants claim a deduction, on account of the merchandise sold at Key West, of the amount of freight thus lost to them.

" The defendants on May 8, 1871, offered judgment for the sum of $1585, being the amount due if the defendants are entitled to make the deductions claimed by them and are not responsible for extra freight for the twelve bales of cotton. If the court should be of opinion that the plaintiff is entitled to receive a sum not exceeding this amount, then judgment to be entered for such amount and costs to the day of such offer; but if the court should be of opinion that the plaintiff is entitled to recover a greater sum, then judgment to be entered for the plaintiff, and the case sent to an assessor."

*F. V. Balch & W. Minot,* 3d, for the plaintiff.

*H. C. Hutchins & H. H. Currier,* for the defendants, beside the cases cited in the opinion, referred to *M' Gaw* v. *Ocean Insurance Co.* 23 Pick. 405, 413; *Weston* v. *Minot,* 3 Woodb. & Min. 436; *Hinsdell* v. *Weed,* 5 Denio, 172; *Mordy* v. *Jones,* 4 B. & C. 394; *Coffin* v. *Storer,* 5 Mass. 252; 3 Kent Com. (6th ed.) 219, 227–229; Maclachlan on Shipping, 394–396; Abbott on Shipping, (11th ed.) 385; 1 Parsons on Shipping, 204, 242–244; Story on Bailments, § 501.

GRAY, J. The determination of this case depends upon the construction and effect of the charter as between the parties to it; and involves no question between either of them and third persons, of liability for supplies, or lien on goods shipped; or otherwise.

The charter is for one round voyage for a lump sum, the payment of which is not declared to depend upon the delivery of the cargo. The master on his part agrees " on the freighting and ·hartering " of the vessel tc the defendants; and they on their

part agree "to charter and hire the said vessel." As between the parties, it is rather a contract for the letting to hire of the whole carrying capacity of the ship for a certain voyage, than a contract for the carriage and delivery of goods. In order to recover the sum agreed to be paid for the use of the ship, the master must indeed perform the voyage; and that he has done. But he has not bound himself absolutely to deliver the whole cargo at its destination; and the loss of part by perils of the sea without his fault does not defeat or affect his right to recover the entire sum agreed to be paid him by the charterers.

The case is fully covered by the judgments of four most accomplished and experienced judges, Dr. Lushington in the high court of admiralty, and Lord Justice Knight Bruce, Sir John Taylor Coleridge and Sir Edward Vaughan Williams in the judicial committee of the privy council, in a case singularly like the present. *The Norway*, Brown. & Lush. 377, 404, and 3 Moore P. C. (N. S.) 245.[*]

It is distinguishable from those cited in the learned argument for the defendants, in which the voyage was wholly broken up and the ship never proceeded to her destination, as in *Mitchell* v. *Darthez*, 2 Bing. N. C. 555; *S. C.* 2 Scott, 771; *The Nathaniel Hooper*, 3 Sumner, 542; *Miston* v. *Lord*, 1 Blatchf. C. C. 354; *The Ann D. Richardson*, 1 Abbott Adm. 499; and *The Erie*, 22 Law Reporter, 152; or in which freight was in terms payable only on delivery of the cargo, as in *Bright* v. *Cowper*, 1 Brownl. 21; *Post* v. *Robertson*, 1 Johns. 24; and *Sayward* v. *Stevens*, 3 Gray, 97; or by the tale, as in *Vlierboom* v. *Chapman*, 13 M. & W 230 *Frith* v. *Barker*, 2 Johns. 327, and *Libby* v. *Gage*, 14 Allen, 261.

The defendants principally rely on the provision in the charter party requiring "the amount of the outward freight to be paid the captain on the safe delivery of the outward cargo at Mobile, free of insurance and commissions, less towages and compressing." But that this "amount of the outward freight" is not

---

[*] See also *Robinson* v. *Knights*, Law Rep. 8 C. P. 465; *Merchant Shipping Co.* v. *Armitage*, Ib. 469, note.

part of the charter money to be paid by the charterers to the owner of the ship, but freight to be collected by the charterers under bills of lading or other agreements between them and owners of the outward cargo, is manifest from several considerations. Assuming it to apply to the charter money, it would afford no rule for estimating what proportion thereof was to be deemed paid for the outward passage ; if half of the charter money had been intended, it would have been easily so expressed. " Free of insurance and commissions " can only apply to freight payable to the defendants ; for they would have no interest in insuring, and no occasion to pay commissions for collecting, freight payable by themselves. " Less towages and compressing " points in the same direction ; for by another clause in the charter party, the charterers were to pay these charges, over and above the charter money ; they had no reason therefore to deduct them out of that money ; but might well retain the amount out of sums received from others for freight. The object of the provision in question was not to make the right to receive the charter money or a moiety thereof dependent upon the delivery of the entire cargo outward or homeward ; but to put the master in funds at the outward port for his disbursements on the voyage, as in *Towle* v. *Kettell*, 5 Cush. 18. If the voyage had not been performed, the amount of freight money thus paid might perhaps have been recovered back. *Griggs* v. *Austin*, 3 Pick. 20. But that question is not now before us.

The plaintiff is therefore entitled to recover the full amount of the charter money, less the sum already paid, and without deduction on account of the merchandise sold at Key West.

The charter party expressly reserves the cabin, and gives the charterers no right therein. The cabin thus reserved clearly includes both the part used as a dining room and that used as a sitting room (although separated by a partition) as well as the state rooms connected with each part. For the cotton stowed in the cabin, besides the full return cargo, the master and owner is entitled to additional freight from the charterers. *Towse* v. *Henderson*, 4 Exch. 890. *Mitcheson* v. *Nicol*, 7 Exch. 929. *Neill* v. *Ridley*, 9 Exch. 677. *Almgren* v. *Dutilh*, 1 Selden, 28.

*Judgment for the plaintiff ; case referred to an assessor.*