ALBANY,
August, 1808.

Watson
v.
Duykinck.

## Watson *against* Duykinck.

THIS cause came before the court, on a writ of error, from the court of common pleas of the city and county of *New-York*. The suit below was an action of *assumpsit* for money had and received to the use of the plaintiff, and a special verdict was found, upon which the court gave judgment in favour of the plaintiff for 60 dollars, on which the defendant below brought a writ of error to this court. The substance of the special verdict was as follows: The defendant below (*Watson*) on the 17th *December*, 1805, was master of the sloop *Harriot*, bound on a voyage from *New-York* to the island of *St. Thomas*. *Watson* agreed with the plaintiff below (*Duykinck*) that "in consideration of 100 dollars to be paid immediately, he would suffer the plaintiff to proceed in the sloop, as a passenger, on the voyage, and to load on board for transportation, merchandise to

*Where freight is paid in advance, on a contract for the transportation of goods, and the vessel is shipwrecked, so that the voyage is broken up, the master or owner is bound to refund the freight paid in advance, unless there is a special agreement to the contrary.*

*Where A. "in consideration of 100 dollars, to be paid immediately, a-greed that he*

would suffer B. to proceed and go in A's vessel, as a passenger, from *New-York* to *St. Thomas's*, and to load on board for transportation, goods to the value of 600 dollars," and B. paid the 100 dollars down, and went on board with his goods, but the vessel, soon after the commencement of the voyage was shipwrecked, and lost, but the goods were saved, and delivered to B. and B. brought an action for money had and received, &c. to recover back the 100 dollars, it was held, that this was an agreement to receive B. and his goods on board, and not an agreement to transport and deliver them at *St. Thomas*, and that the plaintiff, therefore, was not entitled to recover back the money advanced for the freight and passage. The consideration in this case, for the payment of the money, is the receiving of B. and his goods on board, and not the transportation or delivery of them.

ALBANY,
August, 1808.

Watson
v.
Duykinck.

the value of 600 dollars, and that the defendant would provide meat, drink, &c. for the plaintiff, during the voyage." The plaintiff agreed to pay that sum, and accordingly paid it on the same day to the defendant. On the 23d *December*, 1805, the plaintiff embarked, as a passenger, and the defendant procured sufficient necessaries, &c. and the plaintiff put goods on board, to the value of 600 dollars. The sloop sailed on the same day, on the voyage, and was seaworthy. She sprung a leak, two days after leaving the port of *New-York*, and was obliged to bear away for *New-London.* On her way there, she was unavoidably wrecked on *Norwalk Island*, and lost ; the master and crew returned, in 10 days thereafter, to *New-York.* The chief part of the cargo was saved and brought to *New-York*, and the goods of the plaintiff were delivered to him. The plaintiff assisted equally with the crew in endeavouring to save the vessel and cargo. The expense of saving the cargo, and bringing it to *New-York*, was paid by the defendant. The average charge on the plaintiff's goods, towards the expenses of salvage, was 20 dollars. The defendant provided no other vessel, but the plaintiff went to *St. Thomas* in another vessel. The usual price for a passage to *St. Thomas*, for a passenger, is 80 dollars ; and 50 dollars, if he finds himself. By the usage and custom of *New-York*, passage money is paid, at the time the passage is taken, and is never refunded if the voyage has begun, though a subsequent accident should prevent its completion. But whether the plaintiff is entitled to recover back the 100-dollars paid by him, or the same after deducting the salvage aforesaid, or whether the defendant is entitled to have the 20 dollars certified in his favour, the jurors are ignorant, &c.

The following points were made and insisted on by the counsel for the plaintiff in error.

1. That the passage money cannot by law be recovered back, under the circumstances of the case.

2. That the custom found by the jury is conclusive against such recovery.

3. That even if the plaintiff was entitled to recover back his passage money, it could not be in this form of action.

*S. Jones,* jun. for the plaintiff in error. 1. In ordinary cases, it is true, that freight or passage money cannot be recovered, until the service is performed, or until the goods or persons are *transported,* but it is most generally stipulated, that the freight is to be paid on the delivery of the goods at the place of destination, so that the delivery of the goods, or the performance of the service, is made a condition precedent. But where, as in the present case, the freight or passage money is first paid, the performance of the service is a matter subsequent; and where, in such a case, the failure to perform is not owing to any act or negligence of the party stipulating to perform, he is not bound to refund the money. The moment the plaintiff and his goods were on board, and the voyage had commenced, the right of the defendant to the money he had received, was perfect and indefeasible. As in a case of insurance, as soon as the risk has commenced by the inception of the voyage, though the voyage is never performed, the insurer may retain the *premium* which he has received. Where money is paid down for goods to be transported, it is not properly denominated *freight,* which is for the actual carriage of goods, but it is a payment of money for the lading or permitting the goods to be received on board, for the purpose of being carried.*   * *Abbott, 225.*

In the case of *Blakey* v. *Dixon,*† it was said by Mr. Justice *Chambre,* that the receiving of goods on board, to be carried to a foreign port, was a good consideration on which to found a promise to pay the freight immediately; and it was held, in that case, that an action would lie for the money agreed to be paid, though the goods had not been transported.   † *2 Bos. & Pull.* 321.

2. But if any doubts existed as to the law, the usage found by the special verdict, in this case, ought to be conclusive. Usage in all commercial cases, will be received in evidence, and when clearly proved, will always

govern. There is this reason, also, for the usage, that the master is obliged to expend money, in order to provide provisions and stores for the passengers during the voyage.

3. If the plaintiff is entitled to recover his money back, it is not to be recovered in the present form of action. There is no failure of consideration to furnish a ground for this action. Here the contract is entire, and the whole must be recovered, or none. The plaintiff must show that the consideration has *wholly* failed, but the plaintiff and his goods were received on board and a part of the voyage performed. Besides, in an action to recover back money paid on a good consideration, the plaintiff will be held to stricter proof than he would be, if defending himself against the payment of it. If there was an express contract to carry the plaintiff, the proper remedy would have been an action for damages, for the non-performance of the contract.

*J. S. Smith*, contra. 1. The question as to the form of the action was not raised or considered in the court below. But since the case of *Moses* v. *Macfarlane*,* there can be no doubt but that an action for money had and received to the use of the plaintiff will lie. There has been a failure of consideration, and the defendant ought in justice and equity to refund the money.

2. There was a positive agreement, that for the sum of 100 dollars, the defendant would carry the defendant and his goods to *St. Thomas*. *Passage money* and *freight* are the same thing, and where there is an agreement to *transport* goods or persons for a certain sum of money, no freight is due, unless they are transported, or the contract performed.† Although the general rule is, that the contract for the carriage of goods, is an entire contract, yet the exceptions to it, as to a *pro-rata freight*, are as well settled as the rule itself. The cases on this head are numerous, and may be found in *Abbott*, (249. 258. 262.)

* 2 *Burr.* 1005.

† *Abbott*, 225.

3. There cannot be, in this country, any custom or usage so long established, as to have the force of law, and be binding on the parties. At best, it is no more than the local usage of the city of *New-York;* and local usages of particular places form no part of the general *law-merchant*, which is to govern the decision of commercial questions.

KENT, Ch. J. delivered the opinion of the court. The record in this case presents a question of some nicety and difficulty, arising under the marine law. The general rule undoubtedly is, that freight is lost unless the goods are carried to the port of destination. The rule seems also to go farther, and to oblige the master, in case of shipwreck, to restore to the shipper the freight previously advanced. The *English* books are almost silent on the subject, and afford little or no information; but if we resort in this, as we are obliged to do, in many other instances, for light and information, to foreign compilations, and distinguished writers on maritime jurisprudence, we shall find the point before us to have been considered and decided.

*Cleirac*, in his commentary on the judgments of *Oleron*, art. 9. no. 9. (*les Us et Coutumes de la Mer*, p. 42.) declares, that in cases of shipwreck, the master is bound to render to the merchants, the advances which they may have made upon the freight, and he cites a decision of one of the early jurists, in confirmation of his doctrine: *naufragio facto exercitor naula restituit quæ ad manum perceperat, ut qui non trajecerit.* The ordinance of the marine (tit. *du Fret*, art. 18.) recognises this ancient rule, and ordains, that if goods be lost by the perils of the sea, the master shall be holden to refund the freight which had been previously advanced to him, unless there be a special agreement to the contrary. This agreement, according to *Valin*, (*Comm. sur l'Ord.* tom. 1. p. 661.) always contains an express stipulation, that the money advanced shall be retained in any event which may happen in the course of the voyage. The policy of the general rule on this subject, was to take away the temptations to negligence or misconduct, which the certainty of freight was calculated

to produce in the master. I ought, perhaps, to observe, that there is a *dictum* of Mr. Chief Justice *Saunders*, stated in an anonymous case, in 2 *Show.* 291. which would seem to imply, that advance money for freight was, in no event, to be refunded ; but I do not place reliance upon that very imperfect report, in opposition to the explicit opinions of the writers which have been mentioned.(*a*)

The general principle undoubtedly is, that freight is a compensation for the carriage of goods, and if paid in advance, and the goods be not carried, by reason of any event not imputable to the shipper, it then forms the ordinary case of money paid upon a consideration which happens to fail.

The general rule being then well established, the present case turns upon this point, whether the agreement stated in the special verdict, be such as to take the case out of the operation of the rule. The parties agreed, that in consideration of 100 dollars, to be paid immediately, the one would suffer the other to proceed and go in the sloop, as a passenger, on the voyage, and to load on board for transportation, merchandise to the value of 600 dollars, and that he would also maintain him as a passenger, during the voyage. The other party assented and paid the money, and put the goods on board, and proceeded with them as a passenger, until the disaster took place. This agreement did not go the length required by the

(*a*) *Roccus* is also of opinion, that freight paid in advance must be refunded, if the ship is lost during the voyage, or is prevented, by any sinister accident, from arriving at her port of destination. " *Naulum seu vectura non debetur si locator navis propter amissam navim, ve alium casum in eam contingentem iter non fecerit, imo si solutum fuerit repetitur.*" *De nav. et naulo. not.* 80. This doctrine he derives from the Digest, (lib. 19. tit. 2. l. 15. § 6. *Locat. conduct.*)

*Straccha, (de navi.* 3. n. 24.) with whom *Loccenius* (*de jur. marit.* lib. 3. c. 6. § 11.) and *Roccus* (n. 81.) coincide, is of opinion, that, according to this law, the master is entitled to freight, *pro rata itineris,* where he has not been in fault. This idea seems to be founded on a principle of the contract of *letting to hire ;* but *Pothier, (Charte-Partie.* n. 63.) with better reason, thinks the rule of the *French* ordinance the most equitable, and that no freight is due in such a case.

*French* law of stipulating that the money should at all events be retained, but it was still particularly confined to the permission to be received on board, as a passenger, and to load the goods on board. Both these parts of the agreement were literally complied with. This can easily be distinguished from an agreement to transport and *deliver* at the place of destination. In the one case, the master places his compensation upon the actual carriage and delivery of the goods. The safe arrival of the subject is a condition precedent to the payment. In the other case, the consideration is rendered by receiving the goods on board, and making all due and *bona fide* efforts to carry and deliver them. I think this latter is, upon the whole, the better construction of the agreement before us, especially as the practice of retaining the advance freight, in all such cases, must have been known to the parties, from the usage which has been found by the jury, and as the distinction between an agreement to receive on board, and an agreement to transport and deliver, is not a new refinement, but can be traced back to the text of the civil law. The doctrine is recognised and adopted by various authors, that if the agreement be to pay freight for *the loading of the article on board*, the freight is due, though the article perish in the course of the voyage. This is the language of the civil law.

*Gothofredus*, in his notes on the *Digest*,[*] (14. 2. 10.) states the distinction in more clear and explicit terms. *Conduxisti vehenda mancipia : mancipium unum in navi mortuum est; quæritur, num vectura debeatur ? Si de mancipiis vehendis inita conventio est, non debetur : si de mancipiis tantum navi imponendis debetur.*

[*] *Lex Rhodia de jactu.*

*Molloy* (b. 2. c. 4. § 8.) and *Abbott* (p. 225.) seem to have followed the same authorities, but without making any discrimination between the cases where the money was, and where it was not actually advanced beforehand. Perhaps, no such discrimination is to be made, though I think the case of the money actually advanced is the stronger case, as forming superior evidence of the intention of the par-

ALBANY,
August, 1808.

ties that the freight received should, in every event, belong to the master.

We conclude, upon the whole view of this case, that *Watson*, the plaintiff in error, was entitled to retain the freight money, and, consequently, that the judgment below ought to be reversed.

THOMPSON, J. not having heard the argument in the cause, gave no opinion.

Judgment reversed.