ALBANY,
August, 1812.

DETOUCHES
v.
PECK.

DETOUCHES <i>against</i> PECK.

A. the master of a vessel called the *Urania*, lying at *Amsterdam*, for 1,750 guilders paid by B. in advance, contracted for his *passage*, and board in the said vessel, from *Amsterdam* to *Batavia*. The vessel put into *New-York* in distress, and the owner repaired and sent her on a different voyage, to *Naples*; but offered B. a passage in another vessel, which was ready to sail from *New-York* to *Batavia*, and was a larger and more commodious ship; B. though he did not accept the offer, did not object to the change of the vessel, but said he had business to transact in *Philadelphia*, and could not proceed immediately to *Batavia*. In an action brought by B. to recover back the passage money he had paid, it was held, he was not entitled to recover any part of it, as it was by his own act that he did not pursue the voyage, and the vessel in which he set sail deviated from her direct course from necessity; and the providing of diet and accommodations for his passage entering especially into the consideration of the advance for the voyage, part of which had actually been performed.

THIS was an action on the case, brought to recover back the passage money, paid by the plaintiff to the defendant, for a passage in the schooner *Urania*, owned by Messrs. *Minturn & Champlin*, from *Amsterdam* to *Batavia*.

The cause was tried before Mr. Justice *Thompson*, at the *New-York* sittings, in *May*, 1811.

The following receipt was produced on the part of the plaintiff. " Received of *P. G. Detouches*, the sum of 1,750 guilders, for the passage and boarding on board of my vessel, the *Urania*, on her present voyage to *Batavia*, for which I engage myself to afford him my table, and every other accommodation, (liquors excepted.)  *Amsterdam*, 3d *October*, 1809.   *John M. Peck.*"

The *Urania*, after leaving *Amsterdam*, for *Batavia*, put into *New-York* in distress, where she arrived the 6th *December*, 1809.  She did not proceed to *Batavia*, but was, afterwards, sent on a *voyage* from *New-York* to *Naples*, for which place she cleared out the 21st *December*, 1809.

On the arrival of the *Urania* at *New-York*, *Minturn & Champlin* had another vessel, a large and very fine ship, called the *Thames*, nearly ready to sail for *Batavia;* and told the plaintiff, and the other passengers, that they should proceed in her to *Batavia*.   All the other passengers, except the plaintiff, gladly accepted the proposal, as the *Thames* was a large and commodious ship, and in every respect preferable to the *Urania*, which was a small schooner, with very indifferent accommodations.   The plaintiff made no objection to the change, but informed *Champlin*, one of the owners, through the witness, who acted as interpreter,

that he had business of importance to transact at *Philadelphia*, and should not be able to proceed immediately to *Batavia*. It appeared that the plaintiff was indisposed from the time of his arrival at *New-York*, until after the sailing of the *Thames* for *Batavia*.

A verdict was taken for the plaintiff, by consent, for 760 dollars, subject to the opinion of the court, on the above case.

*T. A. Emmet*, for the plaintiff, admitted that no similar case was to be found in the books. He said that the plaintiff did not demand a return of the whole passage money, but was willing to allow a *pro rata* freight for his passage to *New-York*. In that view, it might be likened to the case of goods accepted by the owner or consignee, at an intermediate port. But he contended that a passenger, a reasonable and intelligent being, was not to be treated as a bale of merchandise, and transferred from one ship to another, as it might suit the convenience or pleasure of the captain, or his owners.

The plaintiff had a judgment to exercise, and a choice to make, as to the particular vessel in which he was to be carried. Having made his election, and the defendant having engaged to carry him in a particular ship, he ought not to be obliged, unless in a case of necessity, to proceed in another. It may be, he was better pleased with the *Urania*, and liked his accommodations in that vessel. He might also prefer the master, and have greater confidence in his skill as a navigator.

Again, this may be considered as a contract rescinded by mutual consent, and the plaintiff, therefore, entitled to have his money back.

*Bristed* and *Robinson*, contra, contended, that it was owing to the plaintiff's own act that he was not carried to *Batavia*, as the *Urania* put into *New-York* from necessity, and the defendant offered to provide, and did actually provide, another and a better ship. They admitted that no case in point was to be found; but on principles, they thought it a clear case for the defendant. The defendant must have expended some part of the money he received, in providing diet and accommodation for the plaintiff; and ought, therefore, to retain to that amount, at least, besides, for the transportation *pro rata*, if that could be ascertained.*

* 10 *East*, 468.

ALBANY,
August, 1812.

CRANSTON
v.
KENNY's
EXECUTORS.

*Per Curiam.* The plaintiff is not entitled to recover; for it was his own act that the voyage was not performed by him. The schooner *Urania* deviated from her direct course, and entered the port of *New-York*, from necessity, and as the plaintiff had a better ship provided for his voyage, and made no objection to the change, but was prevented from sailing by his own private business or indisposition, he has no right to call for a return of the freight money, or any part of it. The providing of provisions and accommodations for his passage entered essentially into the consideration for the advance, and part of the voyage was performed. It would be difficult to find a just rule by which to liquidate a *pro rata* freight in such cases,(a) but there is no reason, in this case, for giving the plaintiff the return of any part of the freight.

Judgment for the defendant.

(a) See in a note to *Ingersoll's* translation of *Roccus*, (p. 70.) the following case decided in the supreme court of *Pennsylvania.* It is stated from the relation of one of the counsel in the cause. *Maureau* was master of a *French* vessel bound from *Philadelphia* to *Bordeaux,* on board of which *Germain* took his passage, and paid his passage money in advance. Two days after her sailing, the vessel was wrecked and totally lost in *Delaware Bay.* In an action brought by *G.* against *M.,* the court ruled that the plaintiff was entitled to recover back the whole of the money he had advanced, *deducting a reasonable compensation pro rata intineris, for the two days the plaintiff had been on board.* See *Roccus,* n. 80. 3 *Johns. Rep.* 34.