[See Cases Nos. 17,892 and 17,894.]

---

## Case No. 17,894.

### WINTER et al. v. SIMONTON.

[3 Cranch, C. C. 104.] [1]

Circuit Court, District of Columbia. May Term, 1827. [2]

AGREEMENT TO HIRE VESSEL—ACTION FOR HIRE —CONSTRUCTION OF PLEA — DEPOSITION — CERTIFICATE OF COMMISSIONERS.

1. An agreement to hire a vessel, "from Bath to Havana, and from thence to Mobile or elsewhere, in any legal trade for the space of twelve months, at and after the rate of $425 a month, —$600 to be paid on the arrival of the brig at Havana," the owners covenanting "that the said brig shall be tight, stiff, staunch. and strong, well victualled and manned at their own expense, during that period, the dangers of the sea only excepted"—the hirer paying "all portcharges and pilotage at every place" to which she may go, is not a contract of freight.

2. With regard to the destination and loading of the vessel, the hirer is owner pro hac vice.

3. The general owner is not bound to see that the master performs the voyages indicated by the hirer; the master and mariners being, in that respect, subject to the order and control of the hirer.

4. In an action for the hire of a vessel according to the terms of a sealed agreement, the defendant, by pleading, "that he had paid to the plaintiffs all and every such sums of money as

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

[2] [Reversed in 5 Pet. (30 U. S.) 141.]

were become due and payable from the said defendant, according to the tenor and effect of the said articles of agreement," assumes upon himself the burden of proving that he had paid the hire of the vessel, for the time and at the rate stated in the declaration; and the plaintiffs are not bound to prove any of the facts therein charged.

5. The certificate of the commissioners who have taken a deposition, that they had taken the oath prescribed in their commission, is sufficient evidence of that fact.

6. They are quasi officers of the court, and are to be believed.

Covenant upon an agreement under seal, which was in substance as follows:—That Winter and Bowmans of Bath, (in Maine,) owners of the brig James Munroe of Bath, "agree to let or hire the said brig to the said Simonton, from Bath to Havana, and from thence to Mobile or elsewhere, in any legal trade, for the space of twelve months, at and after the rate of $425 per month, and the said Winter and Bowmans agree that the said brig shall be tight, stiff, staunch, and strong, well victualled and manned at their own expense, during that period, the dangers of the sea only excepted; and the said Simonton on his part agrees to pay or cause to be paid, to the order of the said Winter and Bowmans, on the arrival of the said brig at Havana, the sum of $600; and the said Simonton agrees to pay, or cause to be paid all port-charges and pilotages at every place where she may go to; and the said Simonton further binds himself and agrees to pay, or cause to be paid, after the first-mentioned payment, $600 from time to time, as the charter of the said brig amounts to that sum; that is to say, when the said brig earns $600 at the rate of the beforementioned charter, it is to be paid in Spanish milled dollars in the United States, or in good and approved bills of exchange at from ten to sixty days sight on Boston, New York, or Philadelphia, to the order of Winter and Bowmans. And it is further understood clearly that the said Winter and Bowmans are to be at no other expense than that of victualling, manning, and keeping the hull and rigging of the said vessel in good order. And the said Simonton agrees that this charter shall commence nine days before the brig's leaving the wharf for sea, which shall be noted at the foot of each agreement, being signed in triplicate; and it is understood, the said Simonton has liberty of lading said vessel with any articles he may think proper, contraband goods always excepted;" penalty $2000; and dated, July 15, 1820. At the foot of the agreement is the following, signed by all the parties:— "In case war between the United States and Spain takes place in the intermediate time of the within specified charter of the within named brig James Munroe, it is understood between the parties that the charter shall be null and void on the first information of that event; but that the said

Simonton shall deliver the said brig to the within named Samuel Winter and S. G. and J. Bowman, at Bath aforesaid, he paying charter at the rate within specified, up until the time she is so delivered, the dangers of the seas and enemies excepted. And the parties within named further agree, that the charter shall commence on the 7th day of July, 1820." The declaration, after setting out the substance of the contract, and averring performance of the covenants on the part of the plaintiffs to be performed, averred that the brig, on the 7th of July, 1820, being in fit and proper condition, was, by the said Simonton, taken into his service, and on the 16th sailed from Bath, and afterwards arrived at Havana; during all which time, and afterwards, the said brig, under the direction and control and in the employment of the said Simonton, until the 20th of January following, when, during the prosecution of a voyage under the direction of the said Simonton, the brig was lost by the perils of the sea; at which time she had earned $2,734.17, for the hire and affreightment of the said brig, in virtue of the said charter-party, viz., at the rate of $425 per month, during the said term of twelve months, for which the said brig had been let and hired by the said charter-party, as aforesaid, and from and after the said 7th day of July, 1820, until the loss of the brig as aforesaid, &c.; which said sum of $2,734.17 was then and there in arrear and unpaid, and due and owing by the defendant to the plaintiffs, of which he had due notice, but has never paid the same, &c.

After the opinion of the court upon the demurrer heretofore taken to the declaration, the plaintiffs had leave to amend it, which they did, and the defendant then pleaded four pleas in bar, viz:—First plea. "That he, the said defendant, hath paid to the said plaintiffs all and every such sums of money as were become due and payable from the said defendant, according to the tenor and effect, true intent and meaning of the said articles of agreement, and of this he puts himself upon his country. And the plaintiffs likewise." Second plea. "That the plaintiffs did not, on their part, perform and keep the covenants and stipulations in the said articles of agreement contained, on their part and behalf to be performed and done, according to the tenor and effect, true intent and meaning of the same, in this, to wit: that the said brig or vessel in the said articles of agreement mentioned, the James Munroe, did not pursue the voyage and voyages which the said defendant ordered and appointed for her, and carry on the legal trade in which the said defendant engaged and employed her; but did, without any sufficient lawful cause therefor, depart and deviate from the same; and did, on the 27th of November, 1820, while subject to the order and control of the said defendant, under and by virtue of the said articles of agreement, omit and fail to proceed from Port au Prince to Crooked Island. as the defendant had ordered and appointed; and did unlawfully, and in violation of said articles of agreement, and of the duty and obligations imposed by the same, proceed to the port of Havana, in the island of Cuba, against the orders and directions of this defendant, whereby he sustained great loss and expense, and the voyage in which the said vessel or brig was engaged was greatly delayed and defeated; and afterwards, while the said articles of agreement continued in full force and effect, viz., on the 30th of December, 1820, the said brig or vessel did unlawfully sail from said Crooked Island to Ragged Island, instead of proceeding to the port of Mobile, to which she was destined and bound, according to the orders and instructions of this defendant, whereby and by reason of such unlawful deviation from her voyage, and violation of the orders of this defendant, the said voyage was wholly defeated; and the said brig or vessel was afterwards, viz., on the 20th of January, 1821, wholly lost by shipwreck, and a cargo on board belonging to this defendant, of the value of $10,000, was wholly lost and destroyed to this defendant; and this he is ready to verify," &c. Third plea. This plea was, in substance, that while the brig was lawfully subject to the orders and directions of this defendant, she was dispatched and ordered by the defendant, in a lawful trade, from Port au Prince to Crooked Island, and sailed in the said voyage; "Yet the captain and crew of the vessel, in violation of the orders of the defendant, did carry the said brig to the port of Havana;" whereby, &c. Fourth plea. The fourth plea, in substance, was: That on the 30th of December, 1820, the brig being at Crooked Island, to take in a cargo of salt for the defendant, to be carried direct to Mobile, the defendant procured insurance to be made from Crooked Island to Mobile; yet the captain and crew, well knowing the premises, and without the consent of the defendant, deviated from the said voyage without lawful authority or excuse, and proceeded from Crooked Island to Ragged Island; in consequence of which deviation the brig was lost, and the insurance became void. To the three last pleas there were general demurrers, and joinders.

Mr. Barrell for the plaintiffs, to show that the matters pleaded in these pleas were not conditions, or covenants precedent, cited 5 Petersd. Abr. 313, 314, 318, 325, 326, 328, 329; Havelock v. Geddes, 10 East, 555; Ritchie v. Atkinson, Id. 295; Shields v. Davis, 6 Taunt. 65; Davidson v. Gwynne, 12 East, 381; Sheels v. Davies, 4 Camp. 119; Cole v. Shallet, 3 Lev. 41, 5 Petersd. Abr. 390; Bornmann v. Tooke, 1 Camp. 377.

Mr. Bradley and Mr. Coxe, contra, contended that obedience of orders was, in the nature of things, precedent to the right to recover for the use of the vessel; that freight is not earned until the end of the voyage, and the delivery of the goods; that the contract of freight is entire; that, in the present case, nothing was due until the end of the twelve months for which the vessel was hired; that the question whether a covenant be precedent or not depends more on the nature of the covenant than on its words. They cited Havelock v. Geddes, 10 East, 555; Ritchie v. Atkinson, Id. 295; Shields v. Davis, 6 Taunt. 65; Davidson v. Gwynne, 12 East, 381; Sheels v. Davies, 4 Camp. 119; 5 Petersd. Abr. 314, note, 329, 347, 368; Hotham v. East India Co., Doug. 272; Constable v. Cloberie, Palm. 397; Bornmann v. Tooke, 1 Camp. 377; Osgood v. Groning, 2 Camp. 466; Luke v. Lyde, 2 Burrows, 882; Cook v. Jennings, 7 Term. R. 381; Olhsen v. Drummond, 2 Chit. 705; Com. Cont. 323; Penoyer v. Hallett, 15 Johns. 332; Liddard v. Lopes, 10 East, 526; Caze v. Baltimore Ins. Co., 7 Cranch (11 U. S.) 362; Selw. N. P. "Covenant," 444; 4 Bac. Abr. 627, "Merchant," H.; Byrne v. Pattison, 2 B. & A. 17; S. C. Abb. Shipp. 270, note; 2 Bac. Abr. "Covenant," D; 2 Selw. N. P. 439; Jac. Sea Laws, 229; Abb. Shipp. 134, 163, §§ 13, 209; Ritchie v. Atkinson, 10 East, 306; Magalhaens v. Busher, 4 Camp. 54, 55, 389; Abb. Shipp. 133, 179, 265, § 19; 3 Chit. Pl. 96, 317, 319, 490, 492; 5 Petersd. Abr. 341, §§ 2, 345, 346; Clarke v. Gurnell, 1 Buls. 167; Mackrell v. Simond [2 Chit. 666], Abb. Shipp. 209, 267; Bright v. Cowper, 1 Brownl. & G. 21; Smith v. Wilson, 8 East, 445. See, also, Cole v. Shallet, 3 Lev. 41; Shower v. Anderson, T. Jones, 216; Porter v. Shephard, 6 Term R. 665; Campbell v. Jones, 6 Term. R. 571; Thorpe v. Thorpe, 1 Salk. 171; Gibbon v. Mendez, 2 Barn. & Ald. 17; Vallejo v. Wheeler, Cowp. 144, 147, 154, 155; Hutton v. Bragg, 2 Marsh. C. P. 339; S. C. 7 Taunt. 14; Trinity House v. Clark, 4 Maule & S. 288; Saville v. Campion, 2 Barn. & Ald. 503, 5 Petersd. Abr. 299; Paul v. Birch, 2 Atk. 621; Frazer v. Marsh, 13 East, 238; S. C. 2 Camp. 517; M'Intyre v. Bowne, 1 Johns. 229; Hooe v. Groverman, 1 Cranch [5 U. S.] 215; Fletcher v. Braddick, 2 Bos. & P. N. R. 182; Story, Abb. 33 (27); Cheriot v. Barker, 2 Johns. 346; Tate v. Meek, 2 Moore, 278, cited in 2 Barn. & Ald. 509, not then reported; Yates v. Railston, 2 Moore, 294, also cited in 2 Barn. & Ald. 509; Yates v. Mennell, 2 Moore, 297.

[See Cases Nos. 17,892 and 17,893.]

CRANCH, Chief Judge. The second plea sets up, by way of defence, supposed breaches of covenant on the part of the plaintiffs, and the questions occur: 1st, whether any of the facts stated constitute such a breach of covenant on their part; and, 2d, if so, then whether the covenants, so broken by the plaintiffs, were precedent covenants on their part. Both of which questions must be answered in the affirmative, or the plea must be adjudged bad. Do any of the facts averred in the plea constitute a breach of covenant on the part of the plaintiffs? The facts stated in that plea are, that the brig did not pursue the voyage and voyages which the defendant ordered and appointed for her, and carry on the legal trade in which the defendant engaged and employed her, but did, without any sufficient or lawful cause therefor, depart and deviate from the same; and did, on the 27th of November, 1820, while subject to the control of the defendant, omit and fail to proceed from Port au Prince to Crooked Island, as the plaintiff had ordered and appointed, and proceeded to Havana, against the orders and directions of the defendant; and on the 30th of December sailed from Crooked Island to Ragged Island, instead of proceeding to Mobile, according to the orders of the defendant; by which deviation, and violation of orders the voyage was defeated, and the vessel and cargo lost, on the 20th of January, 1821. This plea is founded upon the supposed obligation of the plaintiffs, either by express covenant, or by implied duty as owners, to see that the brig should perform such voyages as the defendant should indicate; and that the discharge of such obligation or duty was a condition precedent to the right of the plaintiffs to recover the sum stipulated to be paid for the hire of the brig. No such express covenant is found in the charter-party.

The only express covenants, on the part of the plaintiffs are: (1) To let or hire the brig to the defendant, to be used by him, from Bath to Havana, and from thence to Mobile or elsewhere, in any legal trade, for the term of twelve months; (2) that she shall be tight, stiff, stanch, and strong, well-victualled and manned, at the plaintiffs' expense, during that period; the dangers of the seas excepted. If there be any covenant that the brig should go to Havana, or any other port, it is a covenant on the part of the defendant, and for the security of the plaintiffs; for if the brig had never arrived at Havana, the plaintiffs, according to the case of Gibbon v. Mendez, 2 Barn. & Ald. 17, could never have recovered any thing for the hire; because no payment was to be made by the defendant until the arrival of the brig at that port. Nor was there an implied obligation upon the plaintiffs, as owners, to see that the brig should perform such voyages as the defendant should indicate. The possession of the whole vessel and crew was delivered to the defendant, to use them in such voyages, and in such lawful trade as he should think proper with the single limitation of going first to Havana. In that respect, the vessel, the mas-

ter, and mariners were, as is admitted by the plea, subject to the order and control of the defendant. He had a right to direct the lading and destination of the brig, and he was to pay all port charges and pilotages at every place to which she might go. No orders, in these respects, were to be given to the master or mariners, by the plaintiffs. That it was the intention of the parties that the possession of the brig should belong to the defendant is evident from his covenant in the memorandum at the foot of the charter-party, that in case of a war with Spain, he should deliver the brig to the plaintiffs at Bath, "he paying charter at the rate within specified until the time she is so delivered, the dangers of the seas and enemies excepted."

In regard, therefore, to the destination and loading of the vessel, the defendant himself was owner pro hac vice; and the plaintiffs were under no implied obligation to see that the specific voyages should be performed, which the defendant might project. This was not a contract of freight, but of hire. The plaintiffs did not covenant to carry goods, or to perform any specific voyage. In Story, Abb. Shipp. p. 273, it is said, that if the price of transportation of goods be paid upon their being laden on board the vessel, even "this payment, although commonly called freight, is not properly so denominated, that word denoting the price rather of actual carriage than of receiving goods in order to be carried; and therefore in the case of Blakey v. Dixon, 2 Bos. & P. 321, the court, admitting that an action might be brought for money agreed to be paid on receiving the goods on shipboard in order to be transported, decided that such money could not be recovered by the name of freight." Freight is a compensation for the carriage of goods. Watson v. Duykinck, 3 Johns. 335. In the present charter-party the word freight is cautiously avoided, even at the expense of some awkwardness of expression. The plaintiffs agree to "let, or hire," not "let to freight," as is usual in charter-parties of affreightment. The instrument is called "this memorandum of an agreement;" not "this charter-party of affreightment," as is usual in contracts for freight. The word voyage is not used in any part of the instrument, probably because that word, in common acceptation, includes the idea of a mercantile adventure, and not merely the act of going from one port to another; and because the price to be paid was for the time and ability to use the vessel, and not for the actual use of her. The word "freight" was probably avoided because it implied an actual transportation of goods, and it might possibly be said that no freight would be due if no goods should be transported. The usual words "for a voyage," were probably avoided because it might be said that no freight would be earned until the voyage should be

ended. The parties have substituted the word "charter" for the usual term "freight." Thus the defendant agrees "to pay $600 from time to time as the charter of the said brig amounts to that sum: that is to say, when the said brig earns $600, at the rate of the before-mentioned charter, it is to be paid in Spanish milled dollars," &c. And again, the defendant agrees "that the charter shall commence nine days before the brig's leaving the wharf for sea;" and in the memorandum it is provided that, in a certain event, the defendant is to deliver the brig to the plaintiffs at Bath, "he" (the defendant) "paying charter at the rate within specified." The defendant was at liberty to take in goods on freight. In that case the defendant would be entitled to the freight and the plaintiffs to the hire, or the charter, as it is called in the agreement; and each might insure his own interest. The plaintiffs might insure the hire the defendant the freight. If the defendant had taken in goods on freight, the shipper's remedy for non-delivery of those goods would have been against the defendant as owner pro hac vice, and not against the plaintiffs. The court is therefore clearly and unanimously of opinion that this is a case of hire and not of freight. The price was earned by time, not by the carrying of goods, or the ending of a voyage, except as to the payment of the first sum of $600 at Havana. The arrival of the vessel at Havana was a condition precedent to the payment of that sum, not because it was the freight of goods, nor because the voyage was there ended; but because, until the arrival of the brig at Havana the casus fœderis would not have occurred.

The court being of opinion that there was no obligation upon the plaintiffs, either express or implied, to see that the vessel performed the voyage, projected by the defendant, it is unnecessary to consider the other question, viz. whether the plaintiffs' discharge of such an obligation, if it had existed, would have been a condition precedent to the payment of the sum stipulated to be paid for the hire of the vessel; and all the cases may be laid aside which were cited to show that freight is not due until the goods are delivered, or the voyage ended; and to show what covenants are precedent, and what are mutual. The court has carefully examined the authorities cited, and many more, to show in what cases the owner, and in what the charterer, shall be considered as the owner pro hac vice; and they find no case in which the charterer has been held to be owner pro hac vice, so strong as the present; and none in which the possession of the vessel, for the time, has been more completely transferred to the charterer. It would occupy too much time to remark particularly upon the authorities which have been consulted upon that point.

The court has also examined the declara-

tion, and can see no substantial fault in it; and we are unanimously of opinion that the 2d plea is bad. The 3d plea avers a deviation by the master and crew, while the vessel was lawfully subject to the orders and directions of the defendants; and the 4th plea avers that the captain and crew deviated, whereby the vessel and insurance were lost. The court is of opinion that both these pleas are bad for the reasons before given in regard to the 2d plea.

After the opinion of the court was given, the cause came on for trial upon the issue joined upon the first plea, which was, in substance, that the defendant "hath paid to the said plaintiffs all and every such sums of money as were become due and payable from the defendant, according to the tenor and effect, true intent and meaning of the said articles of agreement; and of this he puts himself on the country," and the plaintiffs likewise.

Upon the trial of this issue, Mr. Barrell, for plaintiffs, offered the deposition of Mr. Weber, the master of the brig, taken under a commission from this court.

Mr. Bradley, for defendant, objected that it did not appear that William Terry, who certifies himself to be a justice of the peace, and that the commissioners took before him the oath required by the commission, was a justice of the peace.

THE COURT, however, overruled the objection, saying that the certificate of the commissioners was sufficient evidence that the oath had been properly taken. They are quoad hoc the officers of this court, and are to be believed.

In the course of the trial, which occupied several days, THE COURT (CRANCH, Chief Judge, absent) instructed the jury, at the request of the plaintiff's counsel, "that the plea is no traverse of any averment in the declaration necessary to establish the primary obligation to pay what is therein demanded, nor imposes on the plaintiffs any necessity, in supporting the issue on their part above joined, to prove any averment in their declaration; but that the whole onus probandi, under the affirmative plea of payment, is on the defendant to prove such payment as he has alleged;" the court being of opinion, and so expressing it to the jury, that upon the issue joined in this case, and which the jury had been sworn to try, the defendant had assumed upon himself the burden of proving that he had paid the hire of said vessel for the time stated in the declaration, at the rate of $425 per month.

The defendant took a bill of exceptions and carried the cause to the supreme court, where it was reversed (5 Pet. [30 U. S.] 141), for error in that instruction; but Mr. Justice THOMPSON, who delivered the opinion, intimated that the judgment of this court upon the demurrer, was probably correct.