DAVID OGDEN, Respondent, *v.* THE NEW YORK MUTUAL INSU-
RANCE COMPANY, Appellants.

Where there is an insurance on all passage money received for passengers from
one port to another, named in the policy, it is a contract for the entire voyage,
and requires the delivery of the passengers at the place of destination named.

Insurance for passage money and for freight is usually governed by the same
general rules. If the passage money is paid in advance, and the passenger,
without fault on his part, is not transported to the place agreed upon, it may
be recovered back.

Where there was an insurance of passage money from Liverpool to New York,
and the ship sailed, and had not been heard from twelve months after the
time of sailing — *Held*, the underwriters were liable.

THIS appeal is from a judgment of the Superior Court of
the city of New York. The action is upon an open policy
of insurance, made by the defendants, January 13, 1855,
insuring the plaintiff, on account of whom it may concern,
loss payable to him, at and from Liverpool to New York, on
all passage money received by A. Taylor & Co., or by their
agents in Liverpool, for passengers on board the ship Driver
(and several others), to any amount not exceeding fifty thou-
sand dollars in the aggregate, and all risks to attach as soon
as said passengers are engaged and paid for; amount of pas-
sage money by each ship to be named to the company as soon
as ascertained. The liability of the underwriters in no event
shall exceed the sum insured, and in case of detention by any
of the perils insured against, whereby the passengers' fare or
charges become a charge to the underwriters, it is to be esti-
mated at not exceeding, for first cabin passengers, one dollar
per day, for second cabin, fifty cents per day, and for steerage
passengers, thirty cents per day.  *  *  *  The policy to
be deemed continuous until otherwise directed by either
party, due notice being given. The policy was, in other
respects, in the ordinary form used for the insurance of mer-
chandise. It was continued by the indorsement of the addi-
tional sum of twenty-five thousand dollars at five several
dates, viz.: July 15, 1855; October 22, 1855; April 25,
1856; November 7 1856; and May 31, 1857  On the

19th of March, 1856, the sum of $6,390, for passage money, by the ship Driver, at three per cent premium, for a voyage from Liverpool to New York, was indorsed as a risk taken under the said policy.

The ship Driver sailed from Liverpool on the 13th of February, 1856, with 344 passengers, bound to New York, and their passage money, amounting to the said sum indorsed on the policy, March 19th, 1856, was paid to A. Taylor & Co., agents of the vessel at Liverpool, before sailing. The ship has not been heard from since; and, after the lapse of twelve months, the plaintiff demanded payment, as for a total loss of the passage money, which was refused.

The plaintiff gave in evidence, under objection and exception by the defendant, an act of the British parliament, passed August 14, 1855, directing the form of all passenger contracts in all ships sailing from Great Britain to any place out of Europe, and not within the Mediterranean Sea. The contract bound the ship-owner to furnish a passage in the ship, food, &c., a certain number of cubic feet for luggage, to pay government dues before embarkation, and head-money, if required, before landing, and to land him at the port of destination, for the price agreed on. The plaintiff was part owner, and agent for the ship at New York.

The defendants insisted at the trial that the passage money, for which indemnity is here claimed, was actually received by the plaintiff, or his agents, and that, as yet, he has suffered no loss; that the ship, by taking passengers on board, and commencing the voyage, had partly performed the contract of transportation, and that she was prevented by the act of God, and no other cause, from the complete performance of that contract; that none of the passengers having survived, there can be no claim by them for a return of the passage money. The defendants, on these grounds, moved to dismiss the complaint; but the motion was denied, and the defendants excepted to the ruling.

The judge then directed the jury to find for the plaintiff the amount claimed, with interest; to which instruction the defendants also excepted. The jury rendered a verdict for

the plaintiff for $8,119.69; for which sum, with costs, judg-ment was entered against the defendants. The defendants appealed to the General Term of the Superior Court, where the judgment was affirmed. The defendants now appeal to this court.

*R. S. Emmet,* for the appellants.

*D. Lord,* for the respondent.

LEONARD, J. The loss, if any, which the owners of the ship Driver sustained, and for which they have a right of action, proceeds from their liability to refund the passage money, which was received by their agents, Taylor & Co., at Liverpool. The contract is for the entire voyage, and requires the delivery of the passenger at New York before the passage money is earned. Its prepayment does not exempt the ship or her owners from this obligation. It is indisputable that there was no compliance with the contract in this respect, and the vessel and her owners are liable to the representatives of the deceased passengers for the money paid them for the passage. Passage money and freight are generally governed by the same rule. (*Howland* v. *The Ship Lavinia,* 1 Peters' Adm., 123, 125.) The defendants rely on the case of *Detou-ches* v. *Peck* (9 Johns., 210). It was held in that case, that if the non-performance of the contract is occasioned by the neglect or default of the passenger, he cannot recover money paid in advance for his passage. It is not a case applicable in principle here. Judge STORY says (*Pitman* v. *Hooper,* 3 Sumn., 66): " In the ordinary case of freight paid in advance, I do not understand that, if the voyage is not performed, the owner can, without any express stipulation to the purpose, retain it; but the shipper is entitled to recover it back." And he refers to the case of *Watson* v. *Duyckinck* (3 Johns., 335), and *Griggs* v. *Austin* (3 Pick., 20), as authority for the rule.

In *Watson* v. *Duyckinck,* the recovery in favor of the passenger was defeated from the terms of the contract. It is stated expressly that he would otherwise have been entitled

to recover the money advanced, after the vessel had been wrecked and the voyage broken up. Judge KENT says, in that case: " The general principle undoubtedly is, that freight is a compensation for the carriage of goods, and if paid in advance, and the goods be not carried, by reason of any event not imputable to the shipper, it then forms the ordinary case of money paid upon a consideration, which happens to fail." He then states that the agreement of the parties takes that case out of the rule.

In *Howland* v. *The Ship Lavinia* (*supra*), it is held that no passage money is due, unless the passenger is carried to the port of destination. The liability of the owners to repay the passage money gives the right to indemnity from the insurer. (*Walff* v. *Howard Ins. Co.*, 3 Seld., 583.)

The defendants insist that their liability was affected by the act of parliament, which was passed after the policy of insurance was first issued, and that the evidence of the act, and the contract framed under it, were improperly admitted at the trial. This objection is, I think, unfounded. There is nothing in the policy of insurance settling the form of the passenger contracts. The owners were at liberty to agree upon any terms which they thought proper. The agreement appears to be such as would be implied as to the point of debarkation in a passenger contract. The act of parliament requires it to be in writing and delivered to each passenger, imposing also certain penalties. The act, and the ticket delivered in pursuance of it, tended to settle the nature and form of the liability which the owners had incurred to each passenger. In respect to the delivery of the passenger at the port of destination, it is the same by the contract, or ticket, as it was without. Before the act of parliament, the owner was equally required to deliver the passenger at the port of destination, and he was equally liable to refund the passage money in case of failure, sometimes *pro rata iteneris*, sometimes the whole amount, depending on circumstances and the terms of the contract. Here we know not the cause of the failure to deliver the passengers, but we have no reason to believe that it arose from any fault of the passengers. The

insurer has no concern with the terms upon which the passengers were carried; but, if he had, I am unable to perceive that their risk would be increased beyond the rate incurred by the usual and customary obligation for the transportation of passengers. The act secured the rights and privileges of passengers by a written contract, imposing a penalty for a violation of its terms, as well as for an infringement of the law. The object of the act was to abolish certain abuses which had arisen in the transportation of passengers across the Atlantic. But the subject of the liability of the vessel or owners to refund the whole or any part of the passage money, in case of a failure to carry the passenger to the port of destination, was not one of the abuses within the purview of the act, nor was that subject in any manner affected thereby. It is reasonable and right to assume, that the contracts were made with the passengers in the form required by the law in force at the place where they were made. It became proper evidence, therefore, to prove, or tending to prove, the terms of the agreement in force with the passengers. There was no valid objection to proving the passenger contracts, even if the liability to refund the passage money was the same in case none had been made in writing, or the contract had been simply to furnish a passage from Liverpool to New York by the ship Driver.

It was, also, well argued by the learned counsel for the plaintiff, that each indorsement of an additional sum of $25,-000 was equivalent to the making of a new policy, of the same tenor and effect as the prior one; and that the passage money claimed accrued under an indorsement of an additional sum, after the act of parliament had been passed and had gone into effect.

No error occurred on the trial, in my opinion, and the judgment should be affirmed, with costs.

All the judges concurring,

Judgment affirmed.