### WELCH *against* HICKS.

*Where a ship is disabled from prosecuting her voyage by the perils of the sea, and puts into an intermediate port, and the goods are received there by their owner, he is liable for freight pro rata itineris.*

*But in such a case, where the master, without sufficient cause, refuses to repair his ship and send on the*

ASSUMPSIT for freight of the ship *Romeo*, from *Petersburgh* in *Russia*, to *Princetown* in *Massachusetts ;* tried at the *New-York* circuit, *April 12th*, 1824, before ED-WARDS, C. Judge.

The declaration stated, that the plaintiff, the owner of the ship, received goods on board at *St. Petersburgh*, consigned to the defendant at *New-York ;* but the ship was forced by the violence of winds and tempests, to put into *Princetown*, on her voyage to *New-York*, where the defendant elected to receive the goods, and did receive them, and release the plaintiff from his obligation to transport them to *New-York*. It contained counts adapted both to full and *pro rata* freight.

*goods, and to procure other vessels for the purpose, the owner may immediately demand his goods ; and shall be discharged from freight, both full and pro rata.*

*To entitle to pro rata freight, the acceptance must be voluntary.*

*And where the master having thus put into an intermediate port, at first refused to repair and proceed, and to procure other vessels and send on the goods, though one might have been done ; and the owner negotiated several days with him, in order to induce him to do the one or the other ; and, at last, the master made an offer to repair and proceed, under circumstances calculated to excite doubt of his sincerity ; whereupon, the owner demanded and received the goods, and transported them in vessels in his own procuring ; in an action for freight ; held, that it should have been left to the jury to say whether the proposition to repair, &c. was made bona fide ; and whether the acceptance was voluntary, so as to entitle the ship owner to pro rata freight.*

At the trial, the plaintiff proved the shipment of the goods on certain freight, mentioned in the bill of lading, to be paid by the defendant on delivery of the goods at *New-York;* that on her voyage, the vessel put into *Princetown*, for the cause alleged ; where the defendant accepted the goods ; and the only question at the trial was, whether the acceptance was made under such circumstances as would legally subject the defendant to the payment of freight.

On this point, the proof was, that the defendant, on learning that the ship had put into *Princetown* in distress, despatched *Laban Gardner*, (who was sworn as a witness for the defendant on the trial,) as his agent, with full powers in relation to the goods   *Gardner* arrived at *Princetown, December* 15*th*, 1820. The vessel was lying there, unable to prosecute the voyage in question, without being repaired. She was capable, in his opinion, of being taken to *Boston*, distant from 12 to 15 leagues, where she might have been repaired in a fortnight, at a moderate expense, so as to have taken on the goods to *New-York*. The master refused to repair, or procure other vessels to forward the goods, till he heard from his owner ; and refused to deliver the goods unless *Gardner* would pay full freight. *Gardner* inquired, and found that other vessels could be engaged at *Princetown* to forward the goods, and informed the master ; but he refused to employ them. Things remained in this situation till the 5*th* of *January* ensuing ; the master, on repeated requests, refusing to take measures for forwarding the goods, or to deliver them free of freight. About the 21*st* of *December*, the master said he had received orders to discharge the crew ; and did accordingly discharge them, between that time and the 1*st* of *January*. The harbor became obstructed by ice in about a fortnight after *Gardner* reached *Princetown*. On the 4*th* of *January*, he applied, and repeated his requests to the master, who required time to answer till the next morning ; when he told *Gardner* that he intended to repair the vessel at *Princetown*. *Gardner* swore that he believed him insincere in that remark, from the difficulty of making

ALBANY,
Oct. 1826.

Welch
v.
Hicks.

the repairs there ; and that, at all events, the repairs could not then be made in a reasonable time. The goods were in a perishable condition. The master still refused, for some time, to forward the goods. An agreement was made that they should be delivered to the agent, on his order upon his principal for freight, according to the tenor of the bill of lading. Afterwards, they were delivered unconditionally ; and *Gardner* received and forwarded them to *New-York*, in vessels of his own procuring.

The defendant also offered to prove that the money necessarily expended in freight from *Princetown* to *New-York*, exceeded the whole stipulated freight from *Petersburgh* to *New-York.* This evidence was overruled.

The judge charged, that if a vessel, laden with goods on freight, meets with a disaster in the course of her voyage, and puts into an intermediate port ; and the owner of the goods receives them there, he becomes liable to pay a *pro rata* freight, and that the defendant was liable in this case to pay *pro rata* freight, unless he could shew an express and positive agreement, on the part of the master, to waive and discharge all claim to freight. That the law necessarily implied an agreement to pay freight, from the act of receiving the goods ; and this, notwithstanding the ability of the master to repair in a reasonable time, or send on the goods in other vessels, and his refusal, on request, to do either. That the remedy of the owner of the goods would be to abandon the goods, and bring his action for damages against the master or owner of the vessel ; and in every case, under any circumstances, the owner of the goods becomes liable at all events, by the act of accepting them alone, at the port of distress, to pay a *pro rata* freight ; unless he can shew an express and positive agreement to the contrary. He left it to the jury to say, whether the proof established such an agreement.

Verdict for the plaintiff for $2526,67, damages.

The defendant excepted to the above opinion and charge ; and a motion, founded on the bill of exceptions, was now made, in his behalf, for a new trial.

*G. Griffin*, for the defendant. A *pro rata* freight is due only where the acceptance of the goods is voluntary. It

must be purely a matter of election with the owner; in order to which, there must be volition. The doctrine of *pro rata* freight is of modern origin. The general rule is, that, to entitle to freight, the goods must be delivered at the port of destination. The charter party never provides for freight short of this. There must then be such an acceptance as lays the foundation of a new promise. The action for *pro rata* freight is always assumpsit. These views will be found fully supported by the cases. (*Luke* v. *Lyde*, 2 *Burr.* 885. 1 *W. Bl.* 190, *S. C. Cook* v. *Jennings*, 7 *T. R.* 377, 381. *Mulloy* v. *Backer*, 5 *East*, 316. *Liddard* v. *Lopes*, 10 *id.* 526. *Armroyd* v. *The Un. Ins. Co.*, 3 *Bin.* 437, 447, *per Yeates, J. The Mar. Ins. Co. of N. Y.* v. *The Un. Ins. Co.*, 9 *John.* 186. *Callender* v. *The Ins. Co. of North America*, 5 *Bin.* 525. *Case & Richaud* v. *The Balt. Ins. Co.*, 7 *Cranch*, 358. *Hurtin* v. *The Un. Ins. Co.*, 1 *Condy's Marsh.* 281, *a. note. Robinson* v. *The Mar. Ins. Co*, 2 *John.* 323.)

The action on the new contract is an equitable one. It rests on the ground of benefit to the owner or consignee of the goods; (3 *Chit. Com. Law*, 414;) and if the judge was right in holding us liable, it does not follow that we are not to be allowed the expense incurred, in transporting the goods from *Princetown* to *New-York*. This should be deducted from, or set off against the plaintiff's claim. (*Coffin* v. *Storer*, 5 *Mass. Rep.* 252.)

If the master refused to do what was in his power to forward the goods, he broke his charter party; and has lost all right to recover upon it. Freight, then, should be denied on this ground; or, at least, equitably reduced. The engagement to the freighter has not been fulfilled. On every principle of equity, here should be at least a deduction. (*Hunter* v. *Princep*, 10 *East*, 394, *per Ld. Ellenborough, C. J. Portland Bank* v. *Stubbs*, 6 *Mass. Rep.* 422. *Osgood* v. *Groning*, 2 *Campb.* 466.) The last case shews that it should have been left to the jury to say, whether the master might reasonably have been required to go on with the voyage. (And see *Lawes' Charter Parties*, 160.)

ALBANY,
Oct. 1826.

Welch
v.
Hicks.

*J. Duer*, contra. The questions submitted upon the judge's charge, do not arise out of the case contained in the bill of exceptions. True, they apply to the charge, which was also out of the case. When the judge says that an acceptance under any circumstances will render the defendant liable, he lays down an abstract proposition, which we are not bound to defend. It is enough for us, that the defendant is liable under the circumstances of this case. The court will not grant a new trial on a case, when they see it must result in a verdict against the defendant, at least, as large as the present one. The complaint lies, in truth, on the side of the plaintiff. He was entitled to full freight. The master offered to repair, and proceed with the cargo in the *Romeo*. To this the owner of the goods refused to accede. It was his own fault, that full freight was not earned. The authorities are clear, that we have a right to full freight under such circumstances. We agree that the refusal of the master to repair, or proceed in other vessels, gave a right to the agent to demand the goods, if he had done so immediately. Instead of doing so, he continued a negotiation on the subject for several days; and the master finally offered to repair and proceed with the goods while the negotiation was pending. We agree that an immediate demand of the goods would have freed the shipper from freight. It was in consequence of the offer to repair, and a suspicion of its insincerity, that the goods were finally demanded and delivered. Such is the defendant's own testimony. The jury have tried the question, whether the master intended to deliver the goods free of freight. That question was properly submitted to them.

The event on which *pro rata* freight is claimed, is not provided for in the contract between the parties. There may not, therefore, be any positive claim for it on an abandonment of the voyage at an intermediate port; yet there is a demand in justice, if the abandonment be not the fault of the master or ship owner; and the act of acceptance by the owner of the goods works a legal claim. The extent of this claim is not according to the benefit he may

receive; but the expense incurred in the transportation so far. It is too much to say that there must not only be an acceptance, but a right freely to elect whether to accept or not. One consequence of this doctrine would be, that though the master can neither repair nor send on the goods by another vessel, yet an acceptance shall not entitle to freight. The contrary is clearly settled; and yet the shipper has no election. In such a case, if the goods be demanded and delivered, a right to entire freight arises. I admit that some of the cases cited do countenance the idea, that there must be a freedom to elect; that the acceptance must be voluntary and unconstrained; that is to say, the master must not coerce an acceptance by a refusal to do all he reasonably can towards forwarding the goods. But the rule, as considered and laid down in *Abbott on Shipp.* 336, *Story's ed. pt.* 3, *ch.* 7, *s.* 2, fully accords with the charge of the judge. This book says, if the master be unable, or *decline* to forward the goods, yet an acceptance will bind to pay freight, *pro rata itineris peracti.* It will be seen there, that the ancient authorities do not proceed on the ground of a new contract : but that freight was due by the maratime law, by force of the acceptance. This is the ground on which *Luke* v. *Lyde*, (2 *Burr.* 886,) was decided. That case went on *Lutwidge* v. *Grey*, (*Abb. on Sh. Story's ed.* 340,) which was grounded on the acceptance ; and the cases in this court have gone on the same principle. (1 *John. Cas.* 383. 2 *Caines' Rep.* 21. *Robinson* v. *The Mar. Ins Co.*, 2 *John. Rep.* 322.)

It has been long settled, that expense or other circumstance in the subquent disposition of the goods, cannot vary the amount of the recovery. The rule on this head is laid down in the case last cited.

*Griffin*, in reply. At least, the judge should have submitted, in terms, to the jury, whether the final offer of the master to repair was sincere ; and at all to be relied upon.

I have before given several judicial interpretations of *Luke* v. *Lyde ;* and I will now give two more : *Post* v.

*Robertson*, (1 *John. Rep.* 24,) and *Bradhurst* v. *Col. Ins. Co.*, (9 *John.* 19, 20.)

I admit that commentators, and *Abbott* among the number, have differed from the courts. The only collision, however, is in commentators. There is none in the adjudged cases.

*Curia, per* SUTHERLAND, J. This court has repeatedly held, that freight *pro rata itineris* is due, where a ship, in consequence of the perils of the sea, without any fault of the master, goes into a port short of her destination; and is unable to prosecute the voyage; *and the goods are received by the owner at such intermediate port.* (2 *Caines*, 21. 1 *John.* 27. 2 *John.* 323, 336. 9 *John.* 19, 20, 186.) This principle has been adopted from the decisions of the English courts, commencing with *Luke* v. *Lyde*, (2 *Burr.* 882,) and continued, without any essential conflict or contrariety, down to the present time. (7 *T. R.* 381. 5 *East*, 316. 10 *East*, 393, 526. 2 *Campb.* 466. 3 *Bin.* 448. 5 *id.* 525. 7 *Cranch*, 358. 1 *Marsh.* 281, *note.*)

This general principle is not disputed by the defendant's counsel. On the other hand, it is conceded, that where the master refuses to repair his ship and send on the goods, or to procure other vessels for the purpose, and the owner of the goods then receives them, that this is not such an acceptance of the goods, as will entitle the ship owner to a *pro rata* freight. It is not a voluntary acceptance. He does not elect to receive his goods at the intermediate port, and sell them there, or become his own carrier to the port of destination. He does not assent to the termination of the voyage at the intermediate port: but it having been terminated there against his will, by the refusal of the master to send on his goods to the port of destination, he does not, by receiving them under such circumstances, in judgment of law, promise to pay the freight to the intermediate port.

The judge, in his charge to the jury, entirely excluded the question, whether the acceptance of the goods was

**ALBANY,**
Oct 1826.

Weich
v.
Hicks.

voluntary or not; and instructed them that the fact of receiving the goods under any circumstances, rendered the owner liable for a *pro rata* freight; unless he could show an express and positive agreement of the master, at the time of the delivery of the goods, to waive and discharge all claim to the freight. In this I think he erred. The cases already cited, particularly those in 9 *John.* show, that, in order to raise an implied assumpsit in such cases, the acceptance must be voluntary. No other rule would be consonant with justice or equity.

But the master did finally declare his election to repair his ship, and send on the goods; and they were agreed to be received by the defendant's agent, after such declaration had been made to him. This was at first upon the express condition of his giving an order on the defendant for the freight; but finally they were delivered and received without any such condition. These circumstances are claimed to be sufficient to sustain the verdict; and it is said, admitting the judge's charge to be incorrect, as it goes beyond the facts, a new trial should not, for that reason, be granted. Under the circumstances of the case, the agent might well have supposed that there was no *bona fide* intention to repair. He swears that such was his opinion; and that the goods were finally delivered unconditionally; that is, (as I understand him,) without any order having been given for the freight.

I think the judge should have left it to the jury to determine whether the master did intend to repair the vessel, and complete the voyage; and whether the acceptance of the goods by the agent of the defendant was voluntary or not.

New trial granted.