## Case No. 1,659.

### BORK v. NORTON.

[2 McLean, 422.] [1]

Circuit Court, D. Illinois.   June Term, 1841.

**WITNESS—COMPETENCY—RIGHT TO FREIGHT AT INTERMEDIATE PORT—DELAYS.**

1. To render a witness incompetent he must be interested in the event of the suit.

2. He is incompetent if the verdict can be evidence either for or against him.

3. Consignee of goods, who has delivered them over, without the payment of freight, is a competent witness in a suit, by the master of the vessel, against the owner of the goods.

4. Where a vessel is unable to reach the destined port, and the owner of the cargo receives it, at an intermediate port, freight, pro rata itineris, may be recovered.

5. The master, who is driven to an intermediate port by stress of weather, and his vessel is unable to proceed, is bound to repair his vessel, in convenient time, or procure another vessel to convey the goods. And if he fail in this, he is not entitled to freight.

6. Where the owner of the cargo is the cause why it is not transported to the port designated, full freight may be demanded.

[Cited in Weston v. Minot, Case No. 17,453; Hart v. Shaw, Id. 6,155.]

7. A permanent embargo excuses the master from the performance of his contract. If the obstruction be temporary it suspends it.

8. A contract for the transportation of goods on our lakes, may not, in every respect, be subject to the maritime rule, which applies to the high seas. If there be an obstruction on the lake, a land conveyance may be resorted to. This is preferable to a delay of several months.

At law.

Mr. Morris, for plaintiff.

Mr. Arnold, for defendant.

OPINION OF THE COURT. The plaintiff being master of the brig Illinois has brought this action for the freight of certain merchandise from Buffalo to Chicago. The amount claimed, fourteen hundred dollars. A written agreement between the defendant and the agent of the American Transportation Company, by which the company bound

---

[1] [Reported by Hon. John McLean, Circuit Justice.]

themselves to deliver the goods at Chicago, &c., at a certain sum per hundred, was given in evidence. The deposition of Hubbard, who was the consignee of the cargo, and to whom a part of it was delivered, was offered in evidence, which was objected to on the ground that he was an interested witness. In his deposition Hubbard being asked the question as to his interest, stated that he had none, whatever, in the event of the suit. But it is insisted that having received a part of the goods and delivered them without the payment of freight, he is liable to the plaintiff for the amount, and that his evidence, which may establish the right of the plaintiff against the defendant, will go to discharge himself. This witness states that he delivered the goods to the defendant who, at the same time deposited with him five hundred dollars in scrip, which was to be subject to the order of the defendant, and was not to be applied in payment of the freight except by his direction.

There can be no doubt that the freight is recoverable in the name of the master of the vessel. Abbott, pt. 3, c. 2; 4 Cow. 475. And it is equally clear that he may recover it from the consignee of the goods, or the owner, if they have been delivered to him and the freight has not been paid. The master had a lien upon the goods, and was not bound to deliver them until his transportation charge was paid. And so the consignee, who is liable for the freight, may refuse to deliver the goods to the owner until the freight shall be paid. But if, in the one case or the other, the goods are delivered without payment of the freight, an action may be maintained for it. And it is optional with the master, when the goods have gone into the hands of the owner, whether he will sue the consignee or the owner. He has, in this case, sued the owner and the question is, whether the consignee is a competent witness to prove the delivery of the goods.

Is Hubbard interested in the event of this suit? Can the verdict be used either for or against him as evidence? These are believed to be the true questions; for if he is not interested directly in the event of the suit, and the verdict cannot be used as evidence against or for him—if he have any interest it must be an interest in the question which does not exclude him. Although the plaintiff has a demand against the consignee and the owner for the freight, it is not a just demand. A recovery, without satisfaction, against the owner of the goods, cannot be pleaded in bar to a suit against the consignee. And it is very clear that the verdict which the plaintiff may obtain in this suit can be no evidence either for or against the consignee in an action against him for the freight. Then how can he be an incompetent witness? In the case of Bent v. Baker, 3 Term R. 27, after an elaborate argument and consideration of the question, the court held that a person who had been employed as a broker, by the plaintiff, in procuring the policy to be subscribed by the defendant, and afterwards had himself subscribed as assurer, was a competent witness for the defendant. In a replevin against one of two brokers, partners, who took the goods, the partner not sued was held competent for the defendant. Duncan v. Meikleham, 3 Car. & P. 172. So, where process was issued against three joint trespassers and two only served, the other trespasser never having appeared or pleaded, he was held to be an admissible witness for the defendants; and the court said, "the incompetency of a witness, on the ground of interest, must be confined to a legal fixed interest in the event of the suit." Stockham v. Jones, 10 Johns. 21. The rule is general that one cotrespasser, or, indeed, any joint wrongdoer not sued, is a good witness for another. Humphreys v. Miller, 4 Car. & P. 7. Where the plaintiff, being indebted to the witness, promised him an order on the fund in question when recovered, this was held not to render him incompetent. Ten Eyck v. Bill, 5 Wend. 55. An interest in the suit pending can alone affect the competency of a witness. Owings v. Speed, 5 Wheat. [18 U. S.] 420. In general the liability of a witness to a like action, or his standing in the same predicament with the party sued, if the verdict cannot be given in evidence for or against him, is an interest in the question and does not exclude him. Evans v. Eaton, 7 Wheat. [20 U. S.] 356.

The deposition of Hubbard was admitted, and, with many others, was read in evidence. These proved that the vessel was detained at Buffalo several days, by the order of the defendant, until the reception of all his goods at that place. That after her cargo was on board high and adverse winds prevented her leaving the port; and that having left before the storm ceased she encountered much peril, and was driven back to Buffalo. She left that port so soon as the state of the weather permitted, late in October or the beginning of November, and passing Detroit, on her way to Chicago, she encountered high winds and floating masses of ice in Lake Huron, which placed her in imminent peril, and forced her back to Detroit, where her cargo, having been much exposed and somewhat injured, was unladened. During the winter the defendant had the greater part of his goods conveyed to Chicago, by land, at a heavy expense. So soon as the navigation opened in the spring, the vessel, with that part of the cargo which remained at Detroit, sailed for Chicago and delivered it to Hubbard, the consignee, as above stated. Under this state of facts the plaintiff contends that he is entitled to full freight. That the delays in the voyage were not attributable, in any degree, to his default, and that he performed the contract, by running the vessel to Chicago so soon as it was practicable to do so, and that a prop-

er construction of his contract can require nothing more from him than this. And, in the second place, it is insisted that under the most unfavorable view which can be given to his case, he is entitled to freight pro rata itineris. On the other side the defendant's counsel insists, that the plaintiff, having failed to perform his contract, can recover no compensation.

Marine contracts, and this is in the nature of a marine contract, are not of frequent cognizance in our courts of the west; but the rules by which they are governed, which emanate from the civil and maritime law, are founded in good sense and the great principles of justice, and are not dissimilar, in most respects, to the settled principles of the common law. As a general principle freight on goods is not payable till delivery at the port for which they are shipped. Hawland v. The Lavinia [Case No. 6,797]. And it is an admitted principle that where the owner of the cargo is himself the cause of defeating the voyage, freight is recoverable the same as if the voyage had been performed. If a voyage be broken up by an interdiction of commerce with the port of destination, after its commencement, no freight is payable. The Saratoga [Case No. 12,355]. If a freighted ship becomes disabled on its voyage accidentally, and without any fault of the master, he has his option either to refit it, in convenient time, or to procure another ship to carry the goods. If the freighter disagrees to this, and will not suffer it, the master shall yet be entitled to his whole freight as of the full voyage. 2 Burrows, 887. And this is conformable to the Laws of Oleron, art. 4 (2 Brown, Civ. & Adm. Law, 191). But in the event of another vessel being employed, the master could recover only under the first charter party. He would not be entitled to any increased freight agreed to be paid by the new contract. Still the goods would be bound under the new contract, and any increased sum which the owners might be compelled to pay would be chargeable, perhaps, to the insurers. It is insisted that on the above principle the plaintiff is entitled to recover full freight. That the taking away of the greater part of the goods from Detroit, was the act of defendant, in his own wrong, and cannot prejudice the plaintiff. That he was ready to perform, and did perform, his part of the contract, by completing the voyage so soon as the upper lakes were navigable. And the cases in 4 Johns. Ch. 218; 16 Johns. 36, 364, and 356; 10 East, 556; 2 Johns. 325; 9 Johns. 210,—are relied on in support of this claim.

It may well be a matter of doubt whether all the principles of maritime contracts of this nature can apply to the navigation of our lakes and rivers. The facts of the present case may test this principle. The defendant is a merchant, and the cargo, in question, consisted of merchandize. It was important that his goods should be conveyed to Chicago expeditiously, as the fall and winter sales were of the utmost importance to him. This was known to the master of the vessel. Under such circumstances, was it incumbent on the defendant to wait some four or five months, until the navigation of the upper lakes opened, for the delivery of his goods? The vessel arrived at Chicago some time in March. This would have been very injurious to the defendant, and, indeed, might have been ruinous to him. Such a delay was not within the contemplation of the parties, nor any reasonable construction which can be given to the contract.

In the case of Hadley v. Clarke, 8 Term R. 259, the defendants contracted to carry the plaintiff's goods from Liverpool to Leghorn; on the vessel's arriving at Falmouth, in the course of her voyage, an embargo was laid on her until the further orders of council; it was held that such embargo only suspended, but did not dissolve the contract between the parties; and that, even after two years, when the embargo was taken off, the defendants were answerable to the plaintiff, in damages, for the nonperformance of their contract. The court well remarked, that that was a case of great hardship; both parties being innocent, one must suffer. Lord Kenyon put the case on the ground that a temporary interruption of a voyage, by an embargo, does not put an end to the contract. And, he adds—if this contract were put an end to, it might equally be said, that interruptions to a voyage from other causes would, also, have put an end to it—as a ship being driven out of her course; and yet that was never pretended. Instances of such interruptions frequently occur in voyages from the northwest parts of this kingdom to Ireland; sometimes ships are driven by the violence of the winds to the ports in Denmark where they have been obliged to winter. A distinction, it seems to me, may well be drawn between a contract for the transportation of goods upon the high seas and over lakes of but limited extent. In the former case the risk are numerous, and, being well understood, may, to some extent, at least, be protected by an insurance. In the latter, if the risks are of the same nature, they are more limited. But the main difference is, the transportation by sea is the only means of conveyance in the one case, while, in the other, if obstructions on the water occur by ice or otherwise, a land transportation may be adopted. And the contract is made in reference to this fact, either express or implied. It must be an extraordinary case, indeed, where there is an obstruction of the navigation of the lakes by ice for four months, that the owner of the goods should be bound to wait this period for their delivery. In the decision cited above, the plaintiff recovered only £297.18, which sum he paid for insurance and other charges. But it is not material to decide this point.

The greater part of the goods were received by the defendant at Detroit, and there is no complaint that the residue of the cargo was not duly delivered, by the vessel, at Chicago, in the spring. Now, there is nothing in the evidence which goes to show that the goods, received by the defendant, were not voluntarily delivered to him by the agents of the plaintiff, or of the transportation company in whose service he was employed. This being the fact, it must be considered a modification of the contract by the parties. And it is upon this ground that a pro rata freight may be recovered. In the case of Sompays v. Sater [Case No. 12,277], the court say, a pro rata freight can be demanded only upon the ground that there is a voluntary receipt of the goods, at an intermediate port of the voyage, and an agreement to dispense with the party's transporting them farther. Where the cargo is compulsorily received by the owner, no freight is earned. Hustin v. Union Ins. Co. [Case No. 6,942]. In Cook v. Jennings, 7 Term R. 382, where the defendant agreed to pay so much for freight for goods delivered at A, it was held, freight could not be recovered, pro rata itineris, if the ship be wrecked at B before her arrival at A, though the defendant accept his goods at B. 1 Bos. & P. 634, 240; 1 East. 628; 4 East. 45; 1 Taunt. 300. There can be no doubt that to entitle the master to a pro rata freight, where the voyage has only in part been performed, the acceptance of the goods by the owner or his agent must be voluntary. If the master, without sufficient cause, refuse to repair his ship, at the intermediate port, and send on the goods, or procure another vessel for that purpose, he can recover no freight. Welch v. Hicks, 6 Cow. 504. In the case of Mitchell v. Darthez, 2 Bing. (N. C.) 555, which was decided in 1835, where defendants chartered plaintiff's ship from London to Buenos Ayres, there to deliver her cargo, reload, and proceed to a port between Gibraltar and Antwerp; freight for voyage out and home £1,300, if delivered at Gibraltar, in Spain, London, or Liverpool; £200 to be paid in London on the vessel's departure, the remainder on final delivery of the homeward cargo. The ship proceeded to Buenos Ayres, delivered her cargo there, and sailed again with a cargo of hides, which defendants consigned to Gibraltar. At Fayal the ship and about one third of the hides were lost. The vice-consul of Fayal, acting on behalf of the defendants, at the request of the captain of the ship, transmitted the residue of the hides, by another vessel, to defendants' consignees at Gibraltar, where they were accepted, and the freight from Fayal to Gibraltar paid by defendants. Held, that the plaintiff was not entitled to the £1,300, freight; that he was not entitled to pro rata itineris for freight to Buenos Ayres, or from Fayal to Gibraltar, but that he was entitled to freight, pro rata, from Buenos Ayres to Fayal. Had the vessel been lost at Buenos Ayres nothing more than the £200 could have been claimed, and that sum was paid on the departure of the vessel.

On an examination of the authorities, we think the rule is well settled, that where, through any cause, not within the control of the master, the voyage is terminated at an intermediate port, where the cargo is voluntarily received by the owner, that freight pro rata itineris may be demanded. And in this case they so instructed the jury. And they, also, instructed the jury that the deposit of the five hundred dollars in scrip, by the defendant, with Hubbard, the consignee, being special, could not be applied as a payment for freight, unless a special direction to that effect was subsequently given by the defendant. For the goods delivered at Chicago the plaintiff is entitled to full freight under the contract. And whether any part of this freight has been paid, it will be for the jury to determine from the evidence. The jury found for the plaintiff.