### THE NATIONAL CITY.

(Circuit Court of Appeals, Ninth Circuit. July 7, 1902.)

1. SHIPPING—CONTRACT OF CARRIAGE BY CHARTERER—LIABILITY OF SHIP FOR BREACH.

A charter of a steamer for a term of four months, with privilege of extension for an additional four months, the owner to supply and pay the officers, but all other charges and expenses to be paid by the charterer, who is required to give a bond to protect the owner from liens, is a demise, and the vessel is bound for the contracts made on her behalf by the charterer with passengers or shippers having no knowledge or notice that the charterer was not the owner.

2. SAME—FAILURE TO MAKE RIGHT DELIVERY.

The charterer of a demised steamer contracted with libelants to transport them and certain cargo from San Francisco to points on the Yukon river, the carriage to be made by such steamer to St. Michaels, and by a connecting river steamer for the remaining distance. On arrival at St. Michaels the charterer had no river vessel there, and after some delay the master of the steamer put libelants and their goods on shore, against their protest, refusing to forward them, although transportation up the Yukon was available on other boats. Held, that the contracts were entire, for through transportation, for the completion of which the steamer was bound, and that she was liable in damages for failure to make right delivery by placing libelants on some river vessel for the completion of the voyage.

**8. Same—Damages Recoverable.**

   The fact that the master offered to return libelants to San Francisco free of charge on condition that they would sign a release of damages did not exonerate the steamer from liability for the cost of their return passage after they had been compelled to abandon their further journey because of their inability to pay the rates demanded for transportation up the river.

Appeal from the District Court of the United States for the Northern District of California.

The appellees filed a libel against the National City, a steamer, which had been chartered by the appellant, her managing owner, to the Alaska & Yukon Transportation Company, a corporation of San Francisco, for the voyage from San Francisco to Alaskan ports and to return to San Francisco, for a period of four months from and after February 5, 1895, with the privilege of an extension for four months. The appellant, by the terms of the charter party, was to supply and pay the wages of the captain, the chief engineer, the first assistant, and the first officer. All other charges and expenses were to be borne by the charterer. A bond was given to the appellant to hold him harmless of all liens, claims, and demands accruing under the charter party. The libelants jointly took passage and shipped cargo on the National City at San Francisco. Their tickets were for passage from San Francisco to Dawson City, and the cargo was to be delivered at Circle City. It was understood at the time of buying the tickets and shipping the goods that the National City, owing to her deep draft, could go no further than to St. Michael, and that there the libelants and their property were to be transferred to a river vessel to proceed up the Yukon to their destination. The Alaska & Yukon Transportation Company was at that time building three river steamers at San Francisco for that purpose. Two of these river boats were never sent to St. Michael. The third, the James Ever, was taken in tow by the National City on her voyage to St. Michael, and was lost at sea while on the way. The passage ticket which the libelants received had two coupons attached. The first was for transportation from San Francisco to St. Michael. Across it were stamped in red ink the words "National City." The second coupon was for transportation from St. Michael to Dawson, and contained the words, "Good only on connecting steamer to cover accommodations as specified herein and in conditions named in contract." There were no conditions, however, in the contract pertinent to the questions involved in this case, except the provision that in case of the loss or detention of the steamer during the voyage she should not be held responsible for damages either from accident, fire, or dangers of the sea, nor in such event should the "vessel, her owners or charterers, be under any obligation to forward passengers to their destination by any other conveyance or line, nor to refund the amount of passage money." Upon arriving at St. Michael, the libelants found that the Alaska & Yukon Transportation Company had no river vessel in readiness to receive them or their cargo. They were detained on the vessel 30 days, and then, against their protest, were forced to land, and their property was put ashore. During this time transportation up the Yukon river was available upon other boats, but the master of the National City refused to forward the libelants or their cargo on such vessels, or to pay their transportation. They remained ten days or two weeks on St. Michael Island, when they were ordered off the island by the military commander. They then got a small sailing vessel, and sailed to Nome. Libelant Tough thereupon returned from Nome to St. Michael, and from there took passage to San Francisco, paying $75 for his passage. The libel was filed to recover freight and passage money, other expenses, and damages. The district court denied damages, but awarded to the libelants each the sum of $140, the amount which they had paid for their tickets, and to Tough an additional $75, and awarded to the libelants jointly the further sum of $563.39, the amount which they had prepaid as freight, and allowed interest

on all said amounts at 6 per cent. per annum from the date of the commencement of the suit.

A. C. Freeman and George E. Bates, for appellants.

H. W. Hutton, for appellees.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The principal question presented upon this appeal is whether the National City, which had been chartered by her owner to the Alaska & Yukon Transportation Company, is liable to a lien for the freight and passage money which was paid by the libelants under the circumstances above detailed. It is contended that the voyage which was to be performed by the National City, and the part which she was to take in the contract of transportation of passengers and freight, was fully performed when she arrived at St. Michael, and that neither the steamer nor her owners are responsible for the failure of the charterer to have ready at St. Michael a river vessel to complete the contract. It is not shown that the libelants had any notice that the steamer was chartered, or that any fact came to their knowledge to put them upon inquiry to ascertain whether she was chartered. We think that under the terms of the charter party the vessel was demised to the charterer, and that the latter was the owner pro hac vice, and that, so far as the present case is concerned, the vessel is to be dealt with as if the Alaska & Yukon Transportation Company had been her owner. The Freeman v. Buckingham, 18 How. 189, 15 L. Ed. 341; The Phebe, 1 Ware, 263, Fed. Cas. No. 11,064; Arthur v. The Cassius, 2 Story, 81, 93, Fed. Cas. No. 564. The contract which the corporation made with the libelants was an entire one. It was to carry the libelants and their freight from San Francisco to their final destination on the Yukon river. To the completion of that contract the National City was bound, so far as its part therein was concerned. This is clear from all the dealings between the parties. The bills of lading, while not signed by the master of the steamer, were all made with express reference to transportation thereon, and in one of them it was acknowledged that the goods had been received on board. The passenger tickets referred to the steamer as responsible for the contract, and expressed the conditions which should exempt the vessel from forwarding the passengers to their destination by other conveyance. The steamer was bound, not only to carry, but to rightly deliver, both the passengers and freight. There could be no right delivery by landing the passengers or the freight upon the island, or by landing them otherwise than by placing them on board a river steamer for the voyage up the Yukon. There is no contention (and there can be none) that the National City was prevented by accident or delay or the dangers of the sea from carrying out this contract. It is true that the river steamer which it was undertaking to tow to the mouth of the Yukon river was lost at sea, but the contingency of that loss was one that had not entered into the contract. The master of the National City was not thereby ab-

solved from making a right delivery. The Lady Pike, 21 Wall. 1, 15, 22 L. Ed. 499; King v. Shepherd, 3 Story, 349, Fed. Cas. No. 7,804; Bork v. Norton, 2 McLean, 422, Fed. Cas. No. 1,659. If a river vessel of the Alaska & Yukon Transportation Company were not available at St. Michael, it was the master's duty to procure for the libelants and their cargo transportation upon some other river vessel.

Error is assigned to the allowance by the court of the sum of $75 to the libelant Tough, the cost of his return passage from St. Michael to San Francisco. It is said that this sum should not have been allowed, for the reason that the master of the National City offered to take the libelant back to San Francisco free of charge. It does not appear in the testimony at what time this offer was made, or whether it was or was not made in connection with another offer made by the master, which was that the libelants would be permitted to sell the remainder of their tickets up the Yukon, and return on the National City to San Francisco, provided they would sign a release of the ship from further liability in the matter. The libelants may well have declined the offer to carry them back to San Francisco if it was made at any time before they finally abandoned their plan to go to Dawson City. It appears that the expense of passage and freight up the Yukon by the river boats then available was exorbitant, being $125 for a passenger and $200 a ton for freight. The libelants had not enough money to pay these rates. For aught that appears in the evidence, they may have refused the offer to carry them to San Francisco in the expectation that the ship would yet procure them the means of transportation to Dawson, or that they might otherwise reach their destination. Under the evidence which is before us we cannot say that the court erred in allowing any of the items which were decreed to the appellees.

The decree will be affirmed.